THE IROQUOIS FURNACE COMPANY

*v.*

JAMES McCREA.

*Opinion filed June 19, 1901—Rehearing denied October 9, 1901.*

1. EVIDENCE—*when photograph is properly denied admission.* In a personal injury case a photograph is properly denied admission where it is not shown to be a correct representation of the place of injury as it was prior to or at the time of the injury.

2. SAME—*when evidence of insufficient light for work is proper.* In an action for injuries received by a servant in falling from a dump pile on a dark night, evidence that all the torches and lights furnished by the master were in use is properly admitted as bearing upon due care by the plaintiff, even though such evidence could not be considered on the question of defendant's negligence, owing to there being no allegations of negligence in that regard.

3. TRIAL—*what a proper examination of jurors upon their voir dire.* If an attorney for a certain casualty company is present with the attorneys for the defendant in a personal injury case it is proper to permit plaintiff's counsel, for the purpose of enabling them to exercise their right to peremptory challenge at least, to question certain jurors upon their *voir dire*, as to their interest in such casualty company.

WILKIN, C. J., and CARTWRIGHT, J., dissenting.

*Iroquois Furnace Co.* v. *McCrea*, 91 Ill. App. 337, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

The following statement of facts in this case is made by the Appellate Court:

"This is an action to recover damages for personal injuries sustained by appellee, as is charged, through negligence of appellant. Appellee was employed as night foreman of appellant, a corporation engaged in conducting an iron foundry. The work of appellee consisted in part in superintending the removal of cinders and refuse from the furnaces to a dump-pile. The evidence tends

to show that this dump-pile was from time to time reduced by removal of wagon loads of the cinders and refuse from it during the daytime. Such removals left the pile with a sloping surface, sloping from its top usually at an angle of about sixty degrees. Just prior to the injury in question there had been an unusual amount of the contents of the pile removed during the daytime, which resulted in leaving the pile with a sharp edge, presenting a perpendicular wall of about nine feet, instead of a sloping bank. This change was made by daytime, and there is evidence tending to show that it was effected within a day or two prior to the injury. There is no evidence that appellee was informed, when he came on for his night work, of these changes which had been made in the daytime. Appellee testified that he was unaware of the change. Upon the night of the injury it became the duty of appellee to direct one Flynn, an extra man employed by the appellant, to work wheeling cinders from the furnaces to the dump. Flynn came to appellee and stated that it was too dark to work without a light. Appellee started to go with Flynn to see if it was practicable to work about the dump without a light. The appellant company furnished torches to its employees, but at this time all the torches were in use, and there was none which appellee could take for his own use, or to furnish to Flynn, without depriving some other workman of his light. Appellee and Flynn went without a torch or other light toward the dump-pile, and, as they proceeded in the dark, appellee fell over the edge of a sharp declivity, and was injured. The injury consisted of a broken leg, which united, leaving the ankle enlarged and stiffened. The evidence tended to show a permanent lameness."

The trial in the circuit court resulted in verdict and judgment in favor of appellee for $5000.00. From this judgment an appeal was taken to the Appellate Court,

and the Appellate Court has affirmed the judgment of the circuit court. The present appeal is prosecuted from such judgment of affirmance.

WALL & ROSS, (PERCY WERNER, of counsel,) for appellant.

KING & GROSS, (ANDREW J. HIRSCHL, of counsel,) for appellee.

Per CURIAM: The questions whether the appellant was guilty of negligence which produced the injury, and whether the appellee was guilty of contributory negligence, and whether or not the damages assessed were excessive, are all questions of fact. These, and all the other questions of fact in the case, are settled by the judgments of the lower courts.

In disposing of the other questions involved, the Appellate Court, in its decision, expressed the following views:

"We are of opinion that the action of appellee cannot be said to constitute negligence *per se.*    *    *    *

"The evidence as to demanding more torches from the assistant superintendent was not objected to, and evidence of the fact, that there was no light and no torch not in use when appellee went out with Flynn, was competent, not to establish negligence of appellant in failing to furnish one, for such negligence was not pleaded, but as bearing upon the reasonable care of appellee.

"The court did not err in excluding the photograph offered in evidence, for it did not appear that it was a correct representation of the dump-pile, as it was at or prior to the time of the injury. If it were desired to present a photograph of the boilers only, one should have been prepared, which was not likely to mislead, by showing also the dump-pile as it was a year after the time in question.

"The following instruction was presented to the court by counsel for appellant:

" 'The court instructs you that, if you believe from the evidence, that the plaintiff knew of the removal of the dirt and debris from the dump-pile, or by the exercise of ordinary care could have known of the removal of dirt and debris from the dump-pile, and if the jury also believe from the evidence that the plaintiff failed to exercise ordinary care in going out to the place where he was injured in the night time, then your verdict must be for the defendant.'

"The court modified this instruction by inserting the words, 'at or near the place where plaintiff fell' after the words 'dump-pile.'  This modification is complained of as error.  The instruction taken altogether stated a correct proposition as tendered, and it was equally correct as modified.  We are of opinion that the modification did not impose upon it any limitations which were prejudicial to appellant.  Without its last hypothesis the instruction would in either case, as tendered or as modified, be bad.  It would not follow, because appellee knew of some removals from the pile which always left it with a gradually sloping bank, that, therefore, he was to be charged with notice of a new departure, by which the slope was changed into a sheer descent of nine feet.  The words 'at or near the place where plaintiff fell' would, in their natural and reasonable application, cover any evidence which was introduced showing any knowledge of appellee of prior removals.

"The following instruction also was tendered by counsel for appellant:

" 'The court instructs you, that there are no allegations in the declaration that the defendant was guilty of negligence in failing to furnish the plaintiff lights at the time and place where he was injured, and, therefore, you will disregard all testimony pertaining to the question of lights, and, unless you find the defendant is guilty of

negligence as charged in the declaration, your verdict must be for the defendant.'

"The court modified this instruction so that it read as follows:

" 'The court instructs you there are no allegations in the declaration that the defendant was guilty of negligence in failing to furnish the plaintiff lights at the time and place he was injured; and therefore, you should not find the defendant guilty of negligence in regard to the furnishing of light or base your verdict upon any claimed want of light or torches, and unless you find the defendant is guilty of negligence as charged in the declaration, your verdict must be for the defendant.'

"This modification is assigned as error. We are of opinion that the instruction as tendered was bad, and that the modification by the court made it a proper instruction. The evidence referred to was competent to be considered upon the question of the care exercised by appellee. It was not competent as showing negligence of appellant, for such negligence was not alleged, and to that extent the instruction as modified properly excluded it.

"It is complained that the court erred in permitting counsel for appellee to question certain jurors upon their *voir dire* as to their interest in the Union Casualty Company. It appears that an attorney, representing that company, was present with the attorneys for appellant at the trial. The question was proper at least for the purpose of enabling counsel to exercise their right of peremptory challenge, if for no other purpose. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151; *American Bridge Works* v. *Pereira*, 79 Ill. App. 90, and cases therein cited.) * * * The judgment is affirmed."

We concur in the views above expressed by the Appellate Court, and in the conclusion reached by them.

Accordingly, the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*

WILKIN, C. J., and CARTWRIGHT, J., dissenting:

At the close of the evidence for the plaintiff, and again at the close of all the evidence, the defendant presented to the court an instruction that the evidence was insufficient to sustain the allegations of the declaration and that the verdict should be for the defendant, with a request to give it to the jury. The request was refused and the refusal is assigned as error. The question raised by that assignment is not one of fact, and has not been settled by the judgment of the Appellate Court, as we have held in numerous cases. The motion to instruct the jury to find for the defendant raised a question of law, reviewable in this court, whether there was evidence before the jury which, with all the inferences to be fairly drawn from it, would support a verdict for the plaintiff. (*Offutt* v. *World's Columbian Exposition*, 175 Ill. 472, and cases cited.) The essential facts to be proved by plaintiff were the exercise of ordinary care on his own part, the failure to use a like degree of care by the defendant, and an injury, of which such failure was the proximate cause. In acting on the request for the instruction the court was called upon to consider whether there was evidence which, with all the inferences that might justifiably be drawn from it, fairly tended to prove that the plaintiff was in the exercise of reasonable care for his own safety and that defendant was guilty of negligence as charged in the declaration. The declaration contained one count, in which plaintiff alleged that defendant was operating a factory and plaintiff was in its employ as night furnace-man; that in the ordinary course of his duty he had frequent occasion to pass over a bed of cinders; that it was the duty of defendant not to excavate or remove any material part of the cinders without giving him due warning of the same, in order that he might not fall, while walking in the dark on said bed of cinders, into any excavation; that the defendant carelessly excavated and took away a large portion of said bed of cinders in

the daytime without giving him any warning or notice, and that while he, with all due care and diligence, was walking on said bed of cinders in the night time, in the ordinary course of his duty, he fell from said bed of cinders into the excavation and broke his leg. There was no allegation of negligence in removing the cinders, but the duty alleged was to not make the removal without notice, and the breach of duty charged was in making such removal without warning to plaintiff.

For the purpose of deciding whether there was evidence which fairly tended to sustain the alleged cause of action, a more complete statement of the evidence than the foregoing, adopted from the Appellate Court, seems to be necessary.

There was very little, if any, disagreement at the trial as to the facts of the case. The evidence which it is claimed fairly tended to prove the duty alleged, and a breach thereof, and the care of the plaintiff, is as follows: On November 12, 1895, plaintiff was night foreman for the defendant at its works in Chicago, where it was engaged in the business of making pig iron. He had worked for the defendant five years, and began when the furnace was being constructed. His work was in the day time until August, 1895. In 1894 he was put in charge of all the outside labor in the daytime, and continued in charge until he was made night foreman, in August, 1895. After that time he had charge of the men working at night, and in the absence of the superintendent, assistant superintendent or manager he had absolute authority at the works. The night gang consisted of about forty-six men, of whom he had full control. Everybody was bound to obey his orders and he had full power to discharge any of the men. He commenced going on duty in August at a little before six in the evening and had charge until six in the morning. There was a boiler house standing east and west, with fourteen boilers fronting toward the north. In front of the boilers there was

a paved passageway about eight feet wide, with a row
of iron posts at the outer edge.   Outside of these there
was a passageway about twenty feet wide and another
row of posts.   Beyond these there was a dump-pile, com-
posed of cinders and other refuse of the works.   This
refuse was wheeled out as it was made, and dumped and
leveled off so as to make an embankment about nine feet
high, from the natural surface of the ground to a level
with the floor of the boiler house.   Men wheeled the cin-
ders and refuse from what was called the "down-comer"
to the edge of the embankment, and dumped the wheel-
barrows at the edge so that the cinders ran down the
declivity as steep as they would stand,—perhaps at an
angle of sixty degrees.   Slabs were used in the doors of
cars to keep the coke from falling out, and were called
"coke sticks."   There was a pile of these coke sticks put
outside of the outer row of posts on the dump, to be used
as fuel in the furnaces when gas was short.   According
to plaintiff's witness Joseph Boyer the embankment was
fifty to seventy-five feet long.   He testified that teams
were hauling the dirt away quite often; that defendant
kept a boy there to keep tally, and the superintendent
told the witness to keep an eye on how many loads were
hauled away.   Plaintiff testified that he had never known
but one load of this stuff to be hauled away, but there is
no dispute that it was the custom to dispose of the ref-
use, as defendant had opportunity, to contractors and
others for filling.   Plaintiff had been there for years
while this was done, and could see what the custom was
as to disposing of the stuff and hauling it away.   During
the year 1895, before the accident, defendant had sold a
large quantity of the cinders to a contracting company,
that was hauling it away.   On the day before the acci-
dent there was a considerable quantity hauled, leaving
the embankment perpendicular, and the pile of slabs or
coke sticks was taken away so as not to interfere with
further removal of cinders.   The edge of the bank was

nearer to the boilers than it had been. On the evening of the accident plaintiff came to work, and he had an extra man there by the name of James Flynn. He told Flynn there would be nothing for him to do and to come up and wheel the stuff from the down-comer. Plaintiff went to the office and Flynn came to the door and said he wanted a light; that he could not see anything, and was afraid to go out there without a torch. Plaintiff asked him if he couldn't do without a light, and he said he could not, and plaintiff proposed to go and see. He told Flynn to come along and he would show him where to dump the stuff. They went out, plaintiff leading the way. It was so dark they could not see anything, and the plaintiff stooped over and held his hands out, feeling for the coke sticks. He went thirty-five or forty feet from the boilers before he came to the edge of the bank. He was going entirely by the sense of feeling and could not see that the coke sticks were gone, and when he came to the edge of the embankment he fell over and broke his leg. He had gone out occasionally before that time at night to show the men where to dump cinders, and the last time was two nights before the accident. He testified that there were about twenty torches in use there, and he had authority to take one of the torches if he chose, by stopping the work of a man while he used it; that he was accustomed to take a torch when he went out to take the numbers on the iron cars near the furnace, but that he always went out without a torch on the dump-pile and could feel around, and that he could take a torch wherever he found it.

The failure to furnish light was not charged as a breach of duty towards the plaintiff, and there were torches which he had a right to use. Nor was it charged as negligence that the cinders had been removed as the defendant was in the habit of doing, and as it naturally would whenever it had an opportunity of selling them. One question is whether, in the exercise of ordinary care,

the defendant was bound to give notice to the plaintiff that a lot of cinders had been removed that day. The plaintiff does not come within that class of cases where a person must be informed of a condition because of his youth or inexperience. He was a man of maturity and experience, whom the defendant had placed in charge of its business, and it was not bound to point out dangers which were likely to be appreciated and understood by a person of his capacity. On this motion it must be assumed that the plaintiff had not, in fact, noticed the changing condition of the dump-pile. That fact, however, cannot avail him for two reasons: In the first place, the defendant had a right to act on the presumption that he knew of the customs and conditions that had been under his observation for years. The question whether defendant was guilty of negligence in not notifying the plaintiff of the changing condition of the dump-pile is to be judged upon the assumption that plaintiff knew what was open to his observation. In the second place, plaintiff is chargeable, in law, with knowledge of conditions which he had full opportunity to know. The law does not furnish one standard for employer and another for employee. It would be unavailing to the defendant to say that it did not know of the changing condition of the dump-pile when by the exercise of reasonable care it would have known of it,—and the same thing is to be said of the plaintiff. Actual ignorance of a condition open to observation would neither be allowed as a ground of defense to the defendant nor a ground of recovery to the plaintiff. To create a liability the defendant must have had reasonable ground to believe that the injury would result as a consequence of a failure to give notice. If, in the light of attending circumstances, such an injury might result as a natural and probable consequence to one using ordinary care, it would be negligence to not give warning. In determining whether plaintiff's fall might have been foreseen and expected by the defend-

ant it had a right to assume that he would act with reasonable care and caution in performing his duties. The standard on each side is not the behavior of the careless and reckless, nor of those who take counsel of their fears to guard against dangers which are barely possible, but of the reasonably prudent in view of the ordinary course of human affairs. The coke sticks were put there to be used as fuel, and were not intended as a warning or for a guide or protection. The defendant could not anticipate that their removal would operate to take away a warning of danger, and especially at a time when it was so dark they could not be seen at all. We do not see how it can be said that defendant should assume it as probable that the plaintiff would go out there where he could not see anything and could not have seen the pile of coke sticks if they had been there, to feel for the pile of coke sticks and show a laborer where to work. According to the testimony, if plaintiff had made his exploration in safety Flynn could not have seen the coke sticks or the edge of the bank after they had been found. If there had been no excavation, plaintiff would surely have gone down a declivity of sixty degrees. Whether he would have been injured as he was is a matter of mere speculation, although it was undoubtedly more dangerous on account of the bank being perpendicular.

Again, it was necessary that there should be evidence fairly tending to show that the plaintiff was in the exercise of reasonable care for his own safety. He testified that he had power to take a torch, and he claims that he has acquired a right to sue the defendant and recover damages for the injuries sustained because he did not take one. Defendant had invested him with absolute control of the premises, and whether the torches were many or few, he had an absolute right to secure his own safety by using one. He was vice-principal and foreman, and instead of exercising his powers and right he went out in utter darkness, where he could only feel his way and

where Flynn was afraid to go. If Flynn had been injured defendant would undoubtedly have been held liable on the ground of negligence of plaintiff, as its foreman, in taking him out there. As it happened, plaintiff was the one who was hurt as a result of the same act of negligence on his part.

We think the instruction should have been given.