CHARLES AETITUS, Defendant in Error, *vs.* THE SPRING VALLEY COAL COMPANY, Plaintiff in Error.

*Opinion filed June 29, 1910—Rehearing denied October 11, 1910.*

1. TRIAL—*right to ask jurors whether they are interested in casualty insurance company.* It is proper, for the purpose of enabling counsel to exercise the right of peremptory challenge, to allow jurors in a damage suit against an employer to be asked, on their *voir dire,* whether they are interested in any casualty company which insures employers against damages for injuries to employees, but such question cannot be asked to get before the jury the fact that the defendant is so insured.

2. SAME—*when asking jurors alleged improper questions will not reverse.* Asking two jurors, on their *voir dire,* whether they are interested in any employers' casualty insurance company, even though not for the purpose of enabling counsel to exercise the right of peremptory challenge, will not necessarily work a reversal, where objection to the question was promptly sustained and where the verdict was not large in view of plaintiff's injuries.

3. MINES—*report and record of accident to miner are admissible in evidence.* The report to the State mine inspector and the office record of an accident to a miner, required by statute to be made, are admissible in evidence in an action by the miner for damages, and if any portions of the report and record are objectionable to defendant's counsel he should point out the objectionable parts and ask that they be excluded from the jury, and it is not error to admit in evidence portions not objected to.

4. SAME—*good faith in making inspection is no defense to an action for willful violation of statute.* The fact that defendant's mine examiner and mine manager examined an entry and in good faith determined that it was not dangerous and did not need to be marked does not excuse the defendant from liability for willful violation of the Mines and Miners act if the entry was, in fact, dangerous and the plaintiff was injured in consequence.

5. SAME—*mine owner acts at his peril if he fails to mark dangerous places.* A mine owner having knowledge of dangerous places in the mine or having knowledge of facts which charge him with notice of such dangerous places must mark such places as dangerous, as required by the statute, and if he fails to do so he cannot excuse himself from liability for willful violation of the statute upon the ground that his mine examiner or manager did not think the places dangerous.

6. SAME—*whether place in mine was dangerous is a question for the jury.* Whether a place in a mine where a miner has been injured was dangerous and should have been so marked, as required by the statute, is a question which depends in each case upon the evidence and is to be determined by the jury as a fact.

7. SAME—*discovery and marking of dangerous places is not merely a discretionary duty.* The duty of discovering and marking dangerous places in a mine is a mandatory one, and not one involving such an exercise of judgment and discretion as requires merely good faith by the owner or operator in its performance.

COOKE, CARTWRIGHT and DUNN, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding.

MCDOUGALL, CHAPMAN & BAYNE, for plaintiff in error.

J. L. MURPHY, and WILLIAM HAWTHORNE, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced in the circuit court of Bureau county by Charles Aetitus, the defendant in error, against the Spring Valley Coal Company, the plaintiff in error, to recover damages for a personal injury alleged to have been sustained by the defendant in error while in the employ of the plaintiff in error as a company man in its coal mine, in consequence of the willful violation by the plaintiff in error of sections 16 and 18 of the Mines and Mining act in force on January 21, 1907, the date of the injury. The jury disagreed upon the first trial, and upon the second trial a verdict was rendered in favor of defendant in error for the sum of $2000, upon which the court, after overruling motions for a new trial and in arrest of judgment, rendered judgment, which judgment, upon appeal, was affirmed by the Appellate Court for the

Second District, and the record has been brought to this court by a writ of *certiorari* for further review.

The case was submitted to the jury upon a declaration consisting of two counts, and the general issue was pleaded. The first count was based upon section 18 of the Mines and Mining act, and charged a duty rested upon the plaintiff in error to employ a legally qualified mine examiner, and on each day to cause said mine examiner to visit and inspect the mine before the men were permitted to enter it, and to observe whether there were any unsafe conditions in the mine, and to mark conspicuously all places where dangerous conditions existed; and the second count was based upon section 16 of said act, and charged the duty of the plaintiff in error, through a duly qualified manager of said mine, to see that all dangerous places above and below were properly marked and danger signals displayed when required. Each count averred a willful disregard of the duty charged, in consequence of which the defendant in error was injured.

The evidence introduced on behalf of the defendant in error fairly tended to show that the plaintiff in error was engaged in constructing a mule stable in its mine; that in order to prepare a location for the stable it cleared out a space in an old entry-way in the mine some thirteen feet square, which entry-way had at one time been used as a lye or switch and later as a gob room; that the space had been timbered about twenty years and was situated beneath about four hundred feet of rock and earth; that the sides were perpendicular for four or five feet from the floor of the entry-way and came together in the form of an arch at the top, the highest place, near the center, being from twelve to thirteen feet from the floor of the entry-way; that the accident occurred in the forenoon on Monday; that on the previous Friday, Saturday and Sunday plaintiff in error had caused the gob timbers and the rock and debris which had fallen down to be removed from the said

space; that on the morning of the injury the defendant in error and a workman by the name of Challenger, with the mine manager, met at the place where the stable was to be built, and the defendant in error and Challenger were directed by the mine manager to cut into the south rib of the cleared space two places, some five feet apart, from the floor to the height of eight or more feet, into which to place timbers as a support for the wall and roof of the stable; that the manager made chalk marks where the cuts for the upright timbers were to be made, and directed defendant in error to make one and Challenger the other; that thereafter the manager went away, and during the morning the assistant manager visited the place and gave the defendant in error and Challenger some directions as to the work; that the manager stated to the defendant in error and Challenger, before he left them, to be careful, as the rock might fall; that there were no marks or other signs notifying the defendant in error or Challenger the place was dangerous, neither of whom, so far as the evidence shows, had been at the place after the gob, debris and timbers had been removed until they went to work to make the cuts in the rib; that the only lights in the place were from small lamps worn upon the caps of the men; that the defendant in error and Challenger pulled down some loose rock and tested the roof above them with their picks so far as they could and then commenced to make the cuts in the rib; that after they had worked about two hours, and after the defendant in error had made a cut in the rock of the rib from the floor of the entry-way about seven or eight feet high and from six inches deep at the bottom to from fifteen to eighteen inches deep at the top, there was a fall of about two tons of rock from the roof immediately over where the defendant in error was standing, which struck him and knocked him down, rendering him unconscious and breaking his right arm and otherwise injuring him. The mine manager, the assistant mine man-

ager and the mine examiner of the plaintiff in error testified that they had each examined the space where the stable was to be built after the gob timbers and other debris had been removed and that it was not a dangerous place in which to work at the time the defendant in error was set to work, and that no report had been made showing the place to be dangerous or any danger marks placed or notice for men to keep out for the reason that the place was not dangerous, and the mine manager testified the fall of rock was caused by reason of the work done by the defendant in error and Challenger in the place.

It is first contended that the court erred in refusing to take the case from the jury at the close of all the evidence. The question whether the rock and other debris which fell and struck defendant in error fell by reason of the condition of the roof before the defendant in error commenced work and that the place should have been marked as dangerous was a question of fact for the jury, and we think the evidence fairly tended to support the contention of defendant in error that the place was a dangerous place and should have been marked. The trial court, therefore, did not err in declining to take the case from the jury.

The attorney for defendant in error inquired of two of the jurors, on their *voir dire,* if they were interested in any casualty company which insured employers of labor against damages for injuries to employees. The court sustained an objection to that course of examination. Such examination, if made for the purpose of enabling counsel to exercise their right of peremptory challenge, was held in *Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340, to be proper. The trial court sustained an objection to the examination, and doubtless was of the opinion, from the character of the examination and the persons who were being interrogated, that the questions were not asked for the purpose of exercising the right of peremptory challenge of said jurors, but that the examination, under the authority

of *McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, was improper. As the amount of the verdict is not large considering the defendant in error's injuries, and as the objection to the examination was promptly sustained by the trial court, we think, although the examination may have been for an improper purpose, its effect was not prejudicial and that the judgment of the trial court should not be reversed by reason of such examination. In a case, however, where the verdict is large and it is not apparent the examination was for the purpose of exercising the right of peremptory challenge, under the authority of the *McCarthy case* we should not hesitate to reverse a judgment where the fact that the defendant, an employer of labor, was insured by a casualty company against damages for injuries to his employees had been improperly brought before the jurors during their *voir dire.*

It is also insisted by the plaintiff in error that the trial court committed reversible error in admitting in evidence the report of the accident made by plaintiff in error's general superintendent to the State mine inspector, and in admitting in evidence the record of the accident made and filed in plaintiff in error's office under the provisions of section 27 of the Mines and Mining act, first, on the ground that said report and record were not admissible in evidence for any purpose; and secondly, because the general superintendent's report contained a statement that "a piece of rock fell from the top and struck him," and because the record of the accident contained a statement that the defendant in error "had a wife and child." The report and the record were required by the statute to be made, and we see no reason why they were not admissible in evidence to establish the facts required to be reported to the mine inspector and kept in the office of the plaintiff in error with reference to the accident. If, when the report and record were offered in evidence, any particular parts thereof were thought by counsel to have been objectionable, they should

have pointed out to the court the objectionable parts and asked that those parts of the report and of the record be excluded from the consideration of the jury. The particular portions now complained of were not thus objected to in the trial court, and the court did not err in admitting the report and record in evidence. *McCann* v. *People,* 226 Ill. 562.

The case was apparently tried by plaintiff in error on the theory that if the mine examiner and the mine manager looked the place over where the injury occurred and thought it was not dangerous, and their determination of that fact was made in good faith, the plaintiff in error would not be liable for the injury to defendant in error even though the jury were justified, from the evidence, in finding the place was dangerous and should have been marked as a dangerous place,—in other words, that "good faith" on the part of the owner or operator of a coal mine in a suit for a willful violation of the Mines and Mining act is a defense. We do not think the owner or operator of a mine can excuse himself from liability growing out of a willful violation of the Mines and Mining act,—that is, from a conscious violation of the act,—in failing to properly examine the mine and mark dangerous places therein which are known to him, on the ground that his examiner or manager in good faith thought the place was not dangerous. If this were the law, the right of recovery would not rest upon a conscious violation of the statute but upon the opinion of the owner or operator or his vice-principal,—that is, his examiner or manager,—as to whether the mine was safe or in a dangerous condition. It has been repeatedly held by this court that it is the duty of the owner or operator of a mine to have his mine examined and if it is in a dangerous condition to have the dangerous places designated by the statutory marks, and if he fails in either particular, with knowledge of its dangerous condition or with knowledge of facts from which he ought to know of its danger-

ous condition, he is liable to a person in the mine under his employ who is injured as a result of his willful failure to obey the mandates of the statute. If the mine is in a dangerous condition, and the owner or operator has failed, with knowledge of its condition, to comply with the statute, he is liable, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous. His liability does not rest upon the ground that in good faith or bad faith he thought there was no danger in the mine, but upon the ground that he has, knowing the facts which made the mine dangerous, failed to have the statutory marks properly placed in the mine. When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine owner or operator, or his examiner or manager, to usurp the functions of the court and jury, and to pass upon a question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury. *Catlett* v. *Young,* 143 Ill. 74; *Odin Coal Co.* v. *Denman,* 185 id. 413; *Davis* v. *Illinois Collieries Co.* 232 id. 284; *Eldorado Coal and Coke Co.* v. *Swan,* 227 id. 586; *Mertens* v. *Southern Coal and Mining Co.* 235 id. 540; *Olson* v. *Kelly Coal Co.* 236 id. 502; *McCarthy* v. *Spring Valley Coal Co. supra.*

It is said by the plaintiff in error that the duties imposed upon the owner or operator of a mine by the Mines and Mining act in some instances are mandatory, while in others the performance of the duties imposed by that act upon the owner or operator involves the exercise of judgment, and that the performance of the latter class of duties, among which is that of discovering and marking dangerous places in the mine, involves only the exercise of good faith on the part of the owner or operator. We do not

think the distinction pointed out a valid one but are of the opinion this court is committed to a different doctrine. In *Eldorado Coal and Coke Co.* v. *Swan, supra,* the claimed violation was the failure to maintain a light at the bottom of the shaft. The evidence showed there was a light at that place but was conflicting as to the size and power of the light. The statute required a light sufficient to show the landing and surrounding objects distinctly, and the contention was made that the determination of the question whether the light was sufficient to show the landing and its surroundings distinctly involved the exercise of judgment, and if the appellant company had attempted in good faith to comply with the requirements of the statute in that particular it was relieved from liability. The court held otherwise. On page 590 it was said: "Appellant's most serious contention is, that even if it be conceded that the light was not fully up to the legal requirements in respect to the amount of light, still when the evidence all shows that appellant had made an honest effort to comply with the statute and had partially failed, it cannot be adjudged guilty of a willful violation of the law even if its partial failure arises from negligence on its part in the selection of the means or the method of their application with the view of complying with the statute.. This argument is more ingenious than sound. The fallacy of the argument results from the assumed meaning of the word 'willful,' as it is used in the Miners act. If it were necessary to show an evil intent or any blamable conduct to establish the willfulness contemplated by this statute then there would be more force in this contention. But no such construction of this statute has ever been recognized by this court. On the contrary, it has often been held that an act consciously done,—that is, proceeding from the free and voluntary will,—is willful, within the statute." The court then cited *Catlett* v. *Young,* 143 Ill. 74, and numerous other cases, and commented thereon, and on page 592

said: "These cases are sufficient to show that under the established construction given to the word 'willful' in this statute the questions of the existence or non-existence of good faith or the presence or absence of an intention to comply with the statute on the part of the operator are not involved. In the case at bar the jury have found against appellant on the question of fact as to its willful failure to maintain a sufficient light so that persons could discern the cage and surroundings, and this finding is supported by evidence, and the mere fact that the undisputed evidence shows that appellant maintained an inadequate light at the bottom does not, as a matter of law, show a compliance with the statute. The intent and purpose of this statute is to require the mine owner to provide a light at the bottom of the shaft of sufficient capacity to enable any person approaching the bottom to clearly discern the cage and the objects in the vicinity. The sump is in the vicinity of the cage, and the light ought to be sufficient to enable one coming to the bottom to see where the sump is. It cannot be said, either as a matter of fact or law, that a small oil torch located a few inches from the bottom of the shaft, giving out a flame one or two inches high, is such a light as the law contemplates shall be maintained."

In *Olson* v. *Kelly Coal Co. supra,* the defendant was charged with the willful violation of the Mines and Mining act, and the court, on page 506, said: "The evidence was conflicting as to the condition of the debris upon the gob side of the entry, where the accident occurred. The evidence of the appellee tended to show it was piled near the track to a height of from eighteen inches to three feet, which made it very dangerous to persons similarly situated to appellee at the time he was injured, while the evidence of the appellant tended to show the entry at the point of the injury was in a safe condition. The question of the condition of the entry at the point where the accident occurred was one of fact to be determined by the jury, and

not by the mine examiner. The mine examiner had no power to adjudicate the question of the safety of the entry at that point, (*Davis* v. *Illinois Collieries Co. supra,*) and if the appellant permitted the appellee to enter the mine to work therein, otherwise than under the direction of its mine manager, knowing of said dangerous condition, before said dangerous condition had been made safe, such conduct on its part constituted upon the part of the appellant a conscious violation of section 18 of the Mines and Mining act and rendered the appellant liable to the appellee for a willful violation of said act."

The plaintiff in error has urged as grounds of reversal certain remarks made to the jury by the attorney for the plaintiff on the argument of the case. While what was said by the attorney might well have been omitted, we do not think the remarks constitute grounds of reversal.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

COOKE, CARTWRIGHT and DUNN, JJ., dissenting:

We do not agree with the majority that every failure on the part of a mine examiner to discover a dangerous condition in a mine is a willful violation of the statute, nor do we think that the cases cited in the majority opinion support that doctrine. A willful violation of this statute must necessarily be a conscious or knowing violation. To hold that a mine examiner is bound to discover a dangerous condition in the mine, even though by the honest application of every known means it is impossible to detect it at the time of the examination, and that a failure to discover such condition under such circumstances is willful, is to read into the statute that which is not there, and is to require of a mine operator that which is impossible for him to perform. This statute is not meant to make the operator an insurer against every accident in his mine which results

from dangerous conditions, but only requires him to cause an examination to be made by an authorized examiner, to make the required records of the examination, and to mark such places as are found, upon proper examination and the honest use of approved methods, to be dangerous. It is only a failure to make such an examination that constitutes a willful violation of the statute in respect to guarding against dangerous conditions in mines.