(No. 24040. )
ANN E. SMITHERS, Appellee, *vs.* RUSSEL HENRIQUEZ, Appellant.

*Opinion filed April 15, 1938—Rehearing denied June 15, 1938.*

Stone and Shaw, JJ., dissenting.

Sims & Stransky, (Franklin J. Stransky, and James P. Carey, Jr., of counsel,) for appellant.

Finn & Miller, for appellee.

Per Curiam: The Appellate Court for the First District affirmed a judgment of the circuit court of Cook county for $7500 in favor of appellee and against appellant. The action grew out of an automobile accident at the intersection of Harlem avenue and Higgins road in Chicago. The declaration consists of three counts, the first and third of which charge negligence. The second count charges wilful and wanton misconduct. The judgment was entered upon a general verdict. A detailed statement of the facts is unnecessary here. They appear in the opinion of the Appellate Court. 287 Ill. App. 95.

Prior to the calling of the jury, and out of its presence, plaintiff made an application for leave to ask the jurors if

they were interested financially, as stockholders or otherwise, in the American Employers' Insurance Company. She asked leave to file an affidavit in support of her application. The defendant objected to the granting of such leave, but the court overruled the objection. The affidavit charged, and defendant admitted, that the suit was being defended by that company and was represented by its counsel. It further stated plaintiff believed that unless her counsel be allowed to question prospective jurors as to their financial interest in the insurance company her rights might be seriously prejudiced. During the colloquy plaintiff's counsel stated to the court that, in the last case he tried, there were three or four jurors connected with the company involved in that case. A single question proposed to be asked of the jurors was submitted, and over defendant's objection the court held the interrogatory proper. The examination was ordered to be limited to the question proposed, and plaintiff's counsel was directed to instruct his witnesses to refrain from mentioning any insurance company in their testimony. Twelve jurors were then called into the jury box. Plaintiff's counsed stated the issue, named the parties and their respective counsel, and asked them to raise their hands if they knew anything about the defendants or their attorneys. No response was made to the request. Counsel then interrogated one of them as to his name and residence, and propounded the question approved in chambers: "Are you, Mr. Long, or any of you gentlemen, interested financially, either as stockholders or otherwise, in the American Employers' Insurance Company?" Defendant's objection to the question was overruled, and a motion to discharge the "venire" was denied. There was no response by any juror and the inquiry was not pursued. The further examination of Long and another juror disclosed they were engaged in selling life insurance. They were excused by plaintiff's counsel. No further mention of any insurance company was made during the trial.

It is claimed that the purpose of the inquiry was a mere subterfuge and a clever guise to get before the jury the fact that the insurance company was defending the suit. If that be true, the conduct of plaintiff's counsel cannot be too strongly condemned. It is urged that the plaintiff's affidavit did not allege she believed or had any ground to believe that any of the jurors were financially interested in the defending insurance company, and that after propounding the question counsel made no effort to obtain an answer.

It is a well-known fact that there are numerous liability insurance companies with offices and widespread business connections in the city of Chicago. How plaintiff could be expected to obtain information as to any affiliation of prospective jurors with the interested insurance company before knowing what jurors would be called into the box is not suggested. In any case, to say that as a basis for such an inquiry, litigants must, before the trial, examine the jury list and investigate and determine the qualifications of prospective jurors, would impose an onerous and unreasonable task upon them, and, in effect, nullify the statutory provision and time-honored custom of examining jurors upon the trial. The affidavit made a sufficient showing to warrant the granting of a proper inquiry. While the filing of an affidavit and a preliminary determination of the right to question the jurors as to their qualifications in any respect is unnecessary, it is a commendable practice where it is claimed the subject matter is prejudicial. It protects the opposing litigant from the subject being impressed upon the jury by an altercation or discussion in their presence, and tends to show good faith of the proponent. Under his duty as a lawyer and to his client, plaintiff's counsel was required to exercise all lawful means known to him to see that no interested party sat as a juror in the case. The record discloses that plaintiff's counsel had recently met with a situation which justified his caution. The fact that he did not insist upon an answer to the question does not

tend to show an improper motive behind it. It is logical to assume he expected that if any juror was financially interested in the insurance company it would be manifested in the same manner as the requested response to the previous question,—*i. e.,* by the raising of the hand,—and that he believed the absence of any response answered the question.

The proposed inquiry was disclosed to the court and opposing counsel in chambers and fully discussed before any attempt was made to interrogate the jurors. The record does not show the employment of any subterfuge to inform the jury that an insurance company was defending the suit, or any other improper motive or misconduct on the part of plaintiff's counsel. From the record it appears the inquiry was for the purpose of exercising the right of challenge.

The courts of this State and of other jurisdictions have had frequent occasion to consider cases in which the interest of an insurance company, not a party to the suit, has been disclosed to the jury. They may be divided into three classifications. (1) Where the relation is shown by the questions or answers during the course of the trial after the jury is selected; (2) where the *voir dire* shows a purpose to improperly inform the jury of the relation, and (3) where the information develops on the *voir dire* through questions propounded in good faith, with the object of eliminating interested parties from the jury. In the first class there is no issue to which the questions and answers can have any relevancy. Their purpose is so obviously improper as to fall within the same condemnation as the second class. Where the answer is inadvertently developed or unwittingly made and the effect may be overcome so as to remove any prejudice, the rule is not so strictly applied. Where the misconduct comes within either the first or second classification and the circumstances tend to show a prejudicial effect upon the jury, it constitutes error for which the judgment will be reversed. (*Bishop* v. *Chicago Junction Railway Co.* 289 Ill. 63; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473;

*Eldorado Coal Co.* v. *Swan,* 227 id. 586.) However, if it appears that the jury was not actuated by passion or prejudice on that account, a verdict will not be disturbed. (*Aetitus* v. *Spring Valley Coal Co.* 246 Ill. 32.) Aside from the general principles announced in those cases, they have no application here. This leaves for consideration the question of whether or not the inquiry in this case, apparently made in good faith, was so prejudicial as to require a reversal.

In *Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340, a personal injury case, on the examination of the jury, counsel for plaintiff asked: "Anybody acquainted with Mr. Hertig, who represents the insurance company, I believe the Union Casualty Company of St. Louis?" When defendant's counsel objected, the court inquired if the question was asked in good faith and upon receiving an affirmative answer, permitted counsel to inquire of them collectively whether or not they knew of the company, or were stockholders or otherwise interested therein, or had any friends who were stockholders, to which there was no response. We quoted from the opinion of the Appellate Court: "It is complained that the court erred in permitting counsel for appellee to question certain jurors upon their *voir dire* as to their interest in the Union Casualty Company. It appears that an attorney, representing that company, was present with the attorneys for appellant at the trial. The question was proper at least for the purpose of enabling counsel to exercise their right of peremptory challenge, if for no other purpose. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151; * * *.) The judgment is affirmed." That case closely parallels the case at bar.

In *Kenny* v. *Marquette Cement Manf. Co.* 243 Ill. 396, the plaintiff recovered a judgment of $7500 for injuries, including the loss of his right arm. In that case we said: "While the jury were being impaneled appellee was permitted to ask certain jurymen, 'Are you acquainted with

any of the officers or agents of the Ætna Insurance Company?' This question was improper, and the objection to it should have been sustained by the trial court. (*Eldorado Coal Co.* v. *Swan,* 227 Ill. 586; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473.) We do not think, however, taking into consideration the entire record, that reversible error was committed in permitting this question to be asked." In that case it did not appear that the insurance company was defending the suit or interested in the case, and the juror was not asked whether he had any interest in the company. The *Eldorado Coal Co. case* and the *McCarthy case,* cited in the opinion, involved the mention of insurance during the taking of testimony. In the *Eldorado Coal Co. case* we said: "The court promptly ruled against appellee's right to inquire into the irrelevant matter suggested by the questions, but the questions were repeated to other witnesses. The conduct of counsel in thus seeking to place before the jury matters not involved in the issue is censurable in the highest degree, and if the amount of the verdict were such as to raise a suspicion in our minds that the jury had been influenced by this misconduct, or if the case were a close one on the facts, we would not hesitate to reverse the judgment for this reason alone." Nevertheless, we held that no prejudice was shown, and affirmed the judgment of the Appellate Court upholding the judgment of the circuit court. In the *McCarthy case,* by a question to a witness, it was intimated that one of counsel was attorney for a named insurance company. We said that the intimation may not have been true, and indicated we did not think the question was inadvertently asked. For that, and other prejudicial errors, a judgment for the plaintiff was reversed and the cause remanded.

We said in *Aetitus* v. *Spring Valley Coal Co. supra:* "The attorney for defendant in error inquired of two of the jurors, on their *voir dire,* if they were interested in any casualty company which insured employers of labor against

damages for injuries to employees. The court sustained an objection to that course of examination. Such examination, if made for the purpose of enabling counsel to exercise their right of peremptory challenge, was held in *Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340, to be proper. The trial court sustained an objection to the examination, and doubtless was of the opinion, from the character of the examination and the persons who were being interrogated, that the questions were not asked for the purpose of exercising the right of peremptory challenge of said jurors, but that the examination, under the authority of *McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, was improper. As the amount of the verdict is not large considering the defendant in error's injuries, and as the objection to the examination was promptly sustained by the trial court, we think, although the examination may have been for an improper purpose, its effect was not prejudicial and that the judgment of the trial court should not be reversed by reason of such examination. In a case, however, where the verdict is large and it is not apparent the examination was for the purpose of exercising the right of peremptory challenge, under the authority of the *McCarthy case* we should not hesitate to reverse a judgment where the fact that the defendant, an employer of labor, was insured by a casualty company against damages for injuries to his employees had been improperly brought before the jurors during their *voir dire."* That case is strongly relied upon by appellant. Nothing said therein is persuasive that the judgment in this case should be reversed. The present record contains nothing which tends to show that the inquiry was prompted by any purpose other than to enable counsel, by challenge either for cause or peremptorily, to secure a fair and impartial jury.

Appellant also relies upon *Mithen* v. *Jeffery,* 259 Ill 372, a personal injury case brought by an employee against his employer. A prospective juror testified on *voir dire* that his business was all kinds of insurance, including liability

insurance. He was asked if he knew Mr. Jackson or Mr. Snow. Replying in the negative, he was then asked if he knew The Travelers Insurance Company. An objection to the question was interposed and a motion was made to discharge the panel. Apparently the objection was not passed upon but the motion was overruled. After a further examination disclosing that personal injury claims were made against the liability company by which the juror was employed, he was peremptorily excused. A verdict for $15,000 was reduced to $10,000 by *remittitur*. In that case we said: "It is not proper for an attorney to directly inform a jury that a defendant is insured against liability in the suit on trial, and, of course, the attorney cannot be permitted to accomplish the same result indirectly in the examination of jurors. It is the right of an attorney to ascertain whether a juror has any interest in or relation to claims or suits of the same character as the one being tried, for the purpose of exercising the right of peremptory challenge, (*Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340,) but that can be readily done by an examination which would not lead the jury to understand that the defendant is insured against liability and is without substantial interest in the question of damages. The purpose of an attorney in making such inquiries as were allowed in this case is to inform the jury that a defendant is insured, and such an examination is improper. (*Eldorado Coal Co.* v. *Swan,* 227 Ill. 586; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473; *Aetitus* v. *Spring Valley Coal Co.* 246 id. 32.) * * * It is not necessary to decide whether the error of the court, alone, would be ground for reversal if there were no other erroneous and prejudicial ruling." It is to be noticed that the question did not indicate an attempt to ascertain whether the juror was interested, financially or otherwise, in the company mentioned. There was nothing before the court to indicate that the company was the insurer of the defendant or was defending the suit. The absence of any such show-

ing of good faith brought forth our pronouncement that the purpose was to inform the jury the defendant was insured, and that it was improper. We held that an examination to ascertain whether a juror is interested can be conducted in such a manner as will not lead him to understand the defendant is insured and without a substantial interest in the case. Notwithstanding all this we refrained from holding the error of the court, alone, would be ground for reversal if there were no other erroneous and prejudicial ruling. In reversing the judgment we pointed out, among other prejudicial matters, that the verdict was so large the court required a *remittitur* which the plaintiff was willing to enter. Obviously, the holdings in that case would not justify a reversal in this proceeding.

It is claimed the alleged error in permitting the inquiry was accentuated by the further examination of the two jurymen mentioned, in which it was brought out that one of the life insurance companies had been a defendant in some lawsuits, and that a number of claims were made against the other. Inasmuch as such companies are not engaged in the liability field, we do not perceive how the testimony was prejudicial. Furthermore, it was not objected to. It is also argued that the case is close on the facts and the verdict is excessive, showing the examination had a prejudicial effect on the jury. The evidence discloses that plaintiff suffered a laceration on the chin, fractures of the nose and both jaws, and lost eight front teeth. Opiates and sedatives were necessary to alleviate pain and a nervous condition. For some time she could be fed only liquid by a tube. The jaw did not completely heal for several months and left her with a permanent limitation of its use. It does not appear that the amount of the verdict or the conflict in the testimony indicate the examination of the jurors had any prejudicial effect.

It is manifest, in all the cases on the subject, that to require a reversal, the examination must be such as to show

a prejudice to the rights of the defendant. It is to be remembered that plaintiff's right to an impartial disinterested jury is equal to that of the defendant to have an examination of the jury free from prejudice to his interests. There can be no difference in a court of justice between the rights of litigants to a fair trial, and, if before a jury, that it be impartial and unbiased.

As we said in the *Mithen case*, an examination of jurors may be conducted in such a manner as not to disclose the relation of an insurer. It should be so conducted, but when a direct inquiry is made in good faith and no prejudice results, a verdict should not be disturbed. The trial court in this case did not err in permitting the question to be asked for the purpose of exercising the right of challenge. The decisions in almost all other jurisdictions support our conclusions and it is unnecessary to review them.

There was no error in denying the motion in arrest of judgment. The claim is that the general verdict cannot support a judgment because of the want of any evidence to support the wilful and wanton count. Section 68 of the Civil Practice act (Ill. Rev. Stat. 1937, chap. 110, par. 192) provides that whenever there are several counts in a complaint based on different demands, the court shall, on the demand of either party, direct the jury to find a separate verdict upon each. Defendant filed only a general motion for a directed verdict. He could have availed himself of the provisions of the statute by demanding a separate verdict on the different counts, or he could have moved for the withdrawal of the wilful and wanton count. By failing to do either, he is not in a position to complain. (*Scott* v. *Parlin & Orendorff Co.* 245 Ill. 460.) Another reason is, that only those matters which appear on the face of the record can be urged in arrest of judgment. A motion in arrest is based on the record proper, and in considering such a motion the court does not look into the evidence which, so far as the trial court is concerned, can be made a

part of the record only by a bill of exceptions. *Welch* v. *City of Chicago,* 323 Ill. 498; *Fountain Head Drainage District,* v. *Wright,* 228 id. 208; *Danley* v. *Hibbard,* 222 id. 88.

It is complained that the sixth instruction invades the province of the jury by informing it that the negligence of the defendant, if it believed he was guilty of such negligence, was the proximate cause of the injury. The instruction required the jury to believe, from the evidence, every fact stated in it, but the requirement was not repeated before each of the separate facts, nor was it necessary. After reciting a large number of such facts, the instruction concluded in these words: "and that at the time of the injury the plaintiff was in the exercise of ordinary care for her own safety, and that the defendant was guilty of the negligence which was the proximate cause of the injury as charged in the declaration or some count thereof, and as explained in these instructions, then you should find the defendant guilty." The language is not a model of diction, but it would require a hypercritical construction to say that it assumes the fact as contended. There was no assumption of fact in the instruction. (*Schmitt* v. *Kurrus,* 234 Ill. 578; *Gerke* v. *Fancher,* 158 id. 375.) There is another reason why the objection cannot be upheld. At the time of the trial, section 67 of the Civil Practice act (Smith-Hurd Stat. 1933, chap. 110, par. 191) required that all objections to instructions must be specific and that all overruled objections may be ground for review, but that all objections must be made before the retirement of the jury or within such other time as the court may by order allow before the retirement of the jury, or they will be deemed to have been waived. The only objection made in the trial court to the instruction was that it was so complicated as to mislead the jury. The objection now urged was not presented and defendant cannot now avail himself of it.

Defendant's refused second instruction told the jury, in substance, that if the driver of the car in which plaintiff was

riding was guilty of negligence, she could not recover. It omits any reference to her own negligence or due care. We have repeatedly held that in a suit to recover damages for an injury caused by negligence, the negligence of a third party cannot be imputed to the plaintiff unless the third party occupies the relationship of servant or agent of the plaintiff. The rule applies to infants, or to a wife, as well as to a stranger. They are responsible for their own negligence only. *Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38.

Defendant's refused third instruction was covered by another given at his instance, and one given by the court with the sanction of both parties.

We find no substantial error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Shaw, dissenting:

I cannot concur in a decision which I think contrary to all of our previous decisions and destructive of our long established policy.

In *Mithen* v. *Jefferey, supra,* the matter of insurance was brought before the jury, as in this case, on the *voir dire* examination of a juror. In the opinion in that case this court, speaking by the late Mr. Justice Cartwright, said: "It is not proper for an attorney to directly inform a jury that a defendant is insured against liability in the suit on trial, and, of course, the attorney cannot be permitted to accomplish the same result indirectly in the examination of jurors. It is the right of an attorney to ascertain whether a juror has any interest in or relation to claims or suits of the same character as the one being tried, for the purpose of exercising the right of peremptory challenge, (*Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340,) but that can be readily done by an examination which would not lead the jury to understand that the defendant is insured against liability

and is without substantial interest in the question of damages. The purpose of an attorney in making such inquiries as were allowed in this case is to inform the jury that a defendant is insured, and such an examination is improper. *Eldorado Coal Co.* v. *Swan,* 227 Ill. 586; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473; *Aetitus* v. *Spring Valley Coal Co.* 246 id. 32."

In *Kenny* v. *Marquette Cement Manf. Co. supra,* we said: "While the jury were being impanelled, appellee was permitted to ask certain jurymen, 'Are you acquainted with any of the officers or agents of the Ætna Insurance Company?' This question was improper, and the objection to it should have been sustained by the trial court."

In *Aetitus* v. *Spring Valley Coal Co. supra,* we said: "The attorney for defendant in error inquired of two of the jurors, on their *voir dire,* if they were interested in any casualty company which insured employers of labor against damages for injuries to employees. The court sustained an objection to that course of examination. Such examination, if made for the purpose of enabling counsel to exercise their right of peremptory challenge, was held in *Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340, to be proper. The trial court sustained an objection to the examination, and doubtless was of the opinion, from the character of the examination and the persons who were being interrogated, that the questions were not asked for the purpose of exercising the right of peremptory challenge of said jurors, but that the examination, under the authority of *McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, was improper. As the amount of the verdict is not large considering the defendant in error's injuries, and as the objection to the examination was promptly sustained by the trial court, we think, although the examination may have been for an improper purpose, its effect was not prejudicial and that the judgment of the trial court should not be reversed by reason of such examination. In a case,

however, where the verdict is large and it is not apparent the examination was for the purpose of exercising the right of peremptory challenge, under the authority of the *McCarthy case* we should not hesitate to reverse a judgment where the fact that the defendant, an employer of labor, was insured by a casualty company against damages for injuries to his employees had been improperly brought before the jurors during their *voir dire.*"

In at least three other cases this court has indicated its views as to the prejudicial effect of interjecting the immaterial insurance issue before a jury. In these cases it was brought out during the examination of witnesses, but the effect was identical and the views of this court were the same. Thus, in *Bishop v. Chicago Junction Railway Co.* 289 Ill. 63, we said: "We have frequently held that any reference to the fact that a party sued is protected by an insurance policy from the payment of damages is improper by reason of its influence upon the jury. Such a statement has been held to be reversible error. (*McCarthy v. Spring Valley Coal Co.* 232 Ill. 473.) Any statement which shows that the defendant in a lawsuit is being protected from the payment of damages by being reimbursed for such payment is error, and the superior court erred in not sustaining the objection of plaintiff in error thereto and in not instructing the jury to disregard the statement."

In *Eldorado Coal Co. v. Swan, supra,* we said: "The conduct of counsel in thus seeking to place before the jury matters not involved in the issue is censurable in the highest degree, and if the amount of the verdict were such as to raise a suspicion in our minds that the jury had been influenced by this misconduct, or if the case were a close one on the facts, we would not hesitate to reverse the judgment for this reason alone."

In *McCarthy v. Spring Valley Coal Co. supra,* we said: "The question and the circumstances were well adapted to intimate strongly to the jury that the appellant was insured

against liability for accidents of this character, and that the party which would have to respond for any judgment which might be rendered was the Ætna Insurance Company. Evidence of this character was not competent. The intimation may not have been true, and it is unfortunate that the suggestion should have been inadvertently made. The only effect it could have would be to convey an improper impression to the jury."

I do not find that the rules laid down in the courts of other States are substantially different in their holdings from the rules to which we have previously adhered. There is considerable language in many of the opinions which might indicate a somewhat broader view than we have taken, and a somewhat different means of applying these views in actual practice in courts. I find nothing, however, which should lead us to overrule the very plain position which we have always occupied, since the *Mithen case*. I believe an examination of our previous decisions makes certain things clear and that they should now be followed rather than abandoned. The *Mithen case* does not hold that it is necessarily improper, nor entirely prohibited, to examine prospective jurors on their *voir dire* concerning their interest in or acquaintance with an insurance company defending for its insured, and, therefore, financially interested. It does, however, point out the highly dangerous and prejudicial character of such an examination and indicates the rather obvious doubt that arises as to the degree of good faith being exercised by the attorney. It is pointed out in that opinion that such things as may be necessary to know before intelligently exercising a right of peremptory challenge may be learned by an examination which would not inform the jury of the defendant's being insured. While the plaintiff may insist upon his right to fully inform himself as to the connections of the prospective jurors, he is nevertheless bound, to the utmost of his ability, to protect the defendant's equally valuable right to have a jury unprejudiced by

extraneous matters. I consider the question as one of necessity and good faith, and if a cautiously conducted examination along reasonable lines of approach fails to develop any possible connection between the jurors and the company defending the case, it could hardly be an evidence of good faith for the name of the company to be dragged in. Thus, in the case at bar, had the first juror been asked if he was financially interested, as a stockholder or otherwise, in any corporation and he replied in the negative, the plaintiff's rights would have been guarded as effectually as they were and the defendant would not have been prejudiced. Had he replied in the affirmative he could have been asked to name the kinds of corporations he was interested in and if any of them were insurance companies he could have been asked the names of the insurance companies. Numerous other methods of cautious approach would be instantly apparent to any trial lawyer, and good faith requires that some such method be followed.

Since our decisions noted above the bar of Illinois has been fully aware of the attitude of this court toward this prejudicial subject. If the points involved had never been passed on in this State there could be some possible ground for claiming that the question was asked in good faith. Handled as it has been in this case, the plaintiff obtained no information at all but did succeed in informing the jury of the defendant's insurance, to the prejudice of his case. Since our decisions above noted, it has been known to the bar of this State that we look upon questions of the kind used here as highly prejudicial. If any attorney, in the interests of his client, finds it necessary to deal with such dangerous and prejudicial matters, he must use a degree of care commensurate with the risks involved. Although he should not risk his client's case by failing diligently to inquire into any matter that may be reasonably necessary, yet he should do so with such caution as to avoid prejudice to his opponent. It would be difficult and inadvisable to

attempt to lay down a general rule on this subject further than to point out that the elements of necessity, method of handling and good faith, must be considered, and that each case must be judged on its own record. When the necessity for inquiry about insurance matters becomes apparent, the matter of good faith can readily be determined by the degree of caution and delicacy with which the examination is conducted.

In the case at bar the preliminary affidavit did not state that the plaintiff believed, or had any reason to believe, that any prospective juror was interested financially, either as a stockholder or otherwise, in the American Employers' Insurance Company. Neither did it state that plaintiff had made any investigation as a basis for entertaining any such belief. Nothing was stated to show, except for plaintiffs own interjection of the matter, that any juror would or could know that the insurance company had any interest, or that the attorney for the defendant was representing anybody but the defendant. Before the matter was summarily thrown before the entire panel, there was no caution whatever exercised in approaching the subject. No questions were asked as to the corporate or business or financial interests of any juror. Nothing whatever was done except to throw the insurance matter before the entire jury by a general question and then leave it. None of the things which I would consider as evidence of good faith were even attempted. In the face of a situation of this sort, the defendant is not only prejudiced but entirely helpless to do anything about it. He would not be permitted to explain his position even though his amount of insurance might be exceedingly small compared with the size of a possible verdict, and yet the jury would feel that he had no financial interest in the result. On this very record the judgment is for $7500, whereas it is well known that $5000 is a very customary limit of coverage for injury to one person. The case might have been one of those in which

the insurance company defends under a non-waiver agreement, leaving the company's liability to pay to be determined by later litigation between it and its insured, yet this fact could not be explained to the jury and would not be material. The insurance is taken for the benefit of the insured, is paid for by the insured, and is intended to preserve his own solvency in the event of misfortune. It is not paid for by the injured party and that party can have no interest in it unless and until the insured's legal liability has been established. Jurors are not likely to understand this point but think only that some insurance company is trying to evade payment of a loss for which they have received a premium, and that the questions of negligence, contributory negligence and damages are of no great importance. For these reasons I feel that, in this case, there was nothing to show any necessity for the question being asked, that the subject was not handled with caution and that there is nothing to evidence good faith in the manner in which it was handled. On this point, alone, the judgment should be reversed.

Mr. JUSTICE STONE, also dissenting:

I concur in the bases of the foregoing dissent. The majority opinion clearly goes far beyond the limits laid down in the *Mithen case* and other cases of this court cited. It is to my mind inescapable that in this case the defendant was unjustly prejudiced by the proceedings here complained of, which, by clear inference, informed the jury that he carried insurance.

Either party to a law suit, whether plaintiff or defendant, has a right to knowledge of any fact tending to disqualify a prospective juror; neither has a right to more. Here the proceedings were so conducted as to result in giving information to the entire panel of jurors rather than procuring information from a prospective juror for the protection of the plaintiff. This the plaintiff had no right

to do. Particularly is he without right to import to the jury information that may result in disadvantage or prejudice to the defendant. This seems but elemental justice and must, it seems to me, so appeal to all reasonable minds. The action of the trial court in this case permitted a result prejudicial to the defendant and was grievous error. The limitations set in the *Mithen case* are as wide as simple justice requires or permits.