## Sadie Wilkerson, Appellee, v. Willis Coal & Mining Company, Appellant.

1. MINES AND MINERS—*when willful violation established.* Willful violation in failing to make the roof of a mine safe as provided by statute is established where such roof is left with "treacherous" slate in such condition that it would probably "come down in a very short time," the same being removable by fifteen minutes' work.

2. MINES AND MINERS—*when cause of action for willful violation established.* Upon proof that a mine examiner found a dangerous condition and reported it to the mine manager, that the mine manager willfully failed to make the place in question safe and willfully permitted the deceased to go into the mine to work and be exposed to the danger by reason of which he lost his life, a cause of action is established.

3. MINES AND MINERS—*what not defense to action charging willful violation.* If the plaintiff established a willful violation in that the place where the deceased lost his life was known to be dangerous and was not made safe as required by statute, a liability will not be defeated upon the ground that the examiner and manager had in good faith sought to repair the condition and to render the same safe and did in their judgment so repair and render such place safe.

4. MINES AND MINERS—*what not defense to action charging willful violation.* Contributory negligence on the part of the deceased is not a defense to an action under the Mines and Miners Act charging willful violation of its provisions.

5. PLEADING—*what proof sufficient to sustain action in tort.* In tort it is sufficient to prove enough of the averments to make a case and it is not necessary for the plaintiff to prove all of the allegations of the declaration.

6. INSTRUCTIONS—*when improper modification will not reverse.* If a party offers a faulty instruction and it is modified by the court in such a way as to still leave it faulty, the party so offering it cannot complain of the court's action in that regard .

7. INSTRUCTIONS—*when error will not reverse.* An error in modifying an instruction will not reverse if substantial justice has been done and the jury could not reasonably have arrived at a different finding under the evidence.

Action in case for death caused by wrongful act. Appeal from the Circuit Court of Perry county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed November 12, 1910.

**Statement by the Court.** This appeal is from a judgment of $2,000 rendered in the lower court on a jury trial in favor of appellee and against the appellant coal company for the death of Otto E. Wilkerson, her husband, by reason of the alleged willful violation of the Mines and Miners Act. There are four counts in the declaration, the propriety and sufficiency of which are in no way questioned. The substance of

the charge upon which the recovery is based is that the defendant had in its employ a mine examiner who made an examination of appellant's mine September 9, 1908, before the miners were permitted to enter therein for work; that he discovered at the mouth of twelfth west entry off of the main north entry a lot of cracked and loose material in the roof there which was dangerous and liable to fall; that he made a record of those conditions as he found them in the book kept for that purpose, and placed on the roof there a conspicuous mark as notice to all men to keep out; that the mine manager of appellant willfully violated the Statute, by allowing said deceased, a track layer in said mine, to enter therein for work and not under his direction as mine manager, before said conditions were made safe; and that in consequence thereof said Wilkerson was killed by a fall of slate from the roof at said point.

The evidence shows that Flynn, the mine examiner, discovered the dangerous conditions described in the declaration, and made a report thereof to Rogers, the mine manager, and recorded it in the proper book; that Rogers then directed Flynn, who was also his assistant mine manager, to take with him the necessary timbermen and repair the place; that Flynn and his assistants went to the place and pulled down all the loose material that could be taken down with picks; that they found a large quantity of slate there that they could not pull down which they sounded with their picks, pronounced it "safe for the day" and went away without further effort to safeguard the place, except that Flynn remained near it for a good part of the day watching the roof there; that about four o'clock that afternoon, quitting time, Wilkerson came from his work to this place and climbed into a car there with another man and the car driver; and, while waiting for the signal that the electric current was turned off the wires so they could be safely hauled to the bottom, a large piece of the overhanging slate fell on Wilkerson and killed him.

C. E. Pope, for appellant.

Webb & Webb and A. R. Dry, for appellee.

Mr. Justice Duncan delivered the opinion of the court.

It is insisted by appellant that the court erred in refusing to direct a verdict of not guilty, because the evidence shows that the mine manager took with him good, competent men, and in good faith and to the best of their judgment, repaired the place in question and made it safe. We are unable to agree with counsel for appellant that the timbermen in good faith attempted to make this place safe. The evidence shows clearly on the other hand that they left this place in a dangerous condition and that it was their deliberate judgment that it was unsafe as they left it. There is no question in our minds as to their competency to detect the danger there and to make the place safe, but their own evidence shows clearly that they found it dangerous and left it dangerous.

Sanderson, one of these expert men that went to repair this place, testified about the piece of slate that fell on Wilkerson as follows: "I took all that was loose down and left that until I thought it would get loose; * * * I took down all this slate I could get down and I pronounced it good for that day; * * * I thought it would come down in time; I wanted it to get ripe, I knew it would get ripe; * * * the slate that fell was eleven inches thick; that which fell was bastard free stone, it is a treacherous stone; I did not know how soon it would come down, but I pronounced it safe for that day; * * * I was told to take the loose slate down and make it safe for that day; the slate right under the rock is heavy—it is treacherous; it may sound all right one time and then come down in a very short time; I knew that that morning; it could have been shot down in fifteen minutes and would not have interfered with any work."

Flynn testified thus: "Sanderson pulled down the slate on the north entry first and went over and pulled down slate in the twelfth west, * * * and then said to me, 'we will have to get this piece down,' and he rapped this piece of slate, and said he couldn't get it down, and I wouldn't be sure whether he said he would have to shoot it down or not; I was there when he was rapping it; it did not sound so bad; there is no slate that is safe; I didn't consider this piece that fell would fall right then." Again he says: "I went to the place where this slate fell, and I said to Sanderson we would have to get this down, it is in the road; I didn't think it was liable to come down any time; I said a while ago I didn't consider any slate safe." He also testified that he stayed around there and examined it several times after they had left it, and that he told the boy working there not to get under it; and that he was watching the place because he didn't want it to fall on anybody.

The evidence for appellant not only fails to show that Flynn made the place safe; but that he knowingly and willfully failed to do so, and that he was not willing to swear that it was made safe within the meaning of the Statute. The word, "safe," as used in the Statute means safe, not dangerous. A place is not made safe within the meaning of the statute when it is knowingly left with "treacherous" slate in the roof that will probably "come down in a very short time," and which could be removed in fifteen minutes work.

It is also argued by appellant that there is no evidence in this record to sustain the averment in the declaration that there had been a "recent fall" at said place. It can make no sort of difference whether or not there was a recent fall in the roof there, or whether or not there had in fact been a prior fall of any kind there. In tort it is sufficient to prove enough of the averments to make a case, and it was not necessary for appellee to prove said allegation in this case. She proved that the mine examiner found this danger-

ous condition and reported it to, the mine manager; that the mine manager willfully failed to make it safe, and willfully permitted the deceased to go into said mine to work and be exposed to the danger, by reason of which he lost his life. This was sufficient proof to entitle her as his widow to recover under the declaration.

We have carefully examined all the instructions given for appellee and for appellant, and they state the law applicable to the case fully and accurately with one exception. The court modified appellant's instruction No. 2 by interlining the words, "and in your judgment," making the instruction to read as follows: "And if you further believe that said men went to the place in question and did remedy those conditions, and did, in their judgment, and in your judgment, make the place safe, then the court instructs you that there was not a willful failure," etc. The instruction as modified did not accurately state the law. But it is also true that the instruction as submitted to the court did not accurately state the law. "It is the duty of the owner of a mine to have his mine examined and if it is in a dangerous condition to have the dangerous places designated by the statutory marks, and if he fails in either particular, with knowledge of its dangerous condition or with knowledge of facts from which he ought to know of its dangerous condition, he is liable to a person in the mine under his employ who is injured as a result of his willful failure to obey the mandates of the Statute. * * * His liability does not rest upon the ground that in good faith or bad faith he thought there was no danger in the mine, but upon the ground that he has, knowing the facts which made the mine dangerous failed to have the statutory marks properly placed in the mine. When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts

at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine owner or operator, or his examiner or manager, to usurp the functions of the court and jury, and to pass upon a question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury." Aetitus v. Spring Valley Coal Co., 246 Ill. 32.

The same rule above announced is equally applicable with reference to the duty of making a place safe, as in the case before us, when the operator or examiner or mine manager has found and marked a place in the mine as dangerous. It is then the duty of the mine manager to make the place safe, and he cannot be justified in leaving the place dangerous simply because he in good faith believed, or feigned to believe, he had made it safe, when the conditions are such as he ought to know that it is dangerous. In this case it is so apparent that the assistant mine manager did not, and could not, believe that he made the place in question safe, that we are not disposed to disturb the verdict because the said instruction as given is not entirely accurate in stating the law. Besides, if a party offers a faulty instruction, and it is modified by the court in such a way as to still leave it faulty, the party so offering it cannot complain of the court's action in that regard. If the court did commit error in modifying the instruction, substantial justice has been done and the judgment should not be reversed, as the jury could not reasonably have arrived at a different finding under the evidence. Ryan v. Donnelly, 71 Ill. 100; Crown Coal and Tow Co. v. Taylor, 184 Ill. 250; Swift & Co. v. Rennard, 119 Ill. App. 173.

Contributory negligence on the part of the injured miner has been so frequently held by our Supreme Court and Appellate Courts to be no defense to a willful violation of the Mines and Miners Act as to not require further discussion of such doctrine. There--

fore, the fact that the deceased was attempting to ride in the car against appellant's rules, if true, cannot be considered as a defense in this case.  Kellyville Coal Co. v. Strine, 217 Ill. 516.

We have considered all the other errors assigned by appellant and find that they are not well taken. Finding no reversible error in this record, the judgment of the lower court is affirmed.

*Affirmed.*