## Adolph Piazzi, Appellee, v. Kerens-Donnewald Coal Company, Appellant.

1. MINES AND MINERS—*liability under statute regulating.* Plaintiff charged defendant with having permitted a dangerous condition to exist in a cross-cut in its coal mine, owing to a loose rock in the roof, and with wilful failure to fix a conspicuous mark there as warning. While engaged in cleaning out the cross-cut and after attempting to pry the rock out with a pick, plaintiff was struck by the falling rock. *Held,* that the questions as to such danger and violation of statutory duty were for the jury.

2. MINES AND MINERS—*liability under statute.* It is the duty of the owner of a mine to have it examined and to have dangerous places therein designated by statutory marks, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous.

3. MINES AND MINERS—*liability under statute regulating.* The question of the condition of a coal mine, where an accident occurs, is one of fact, to be determined by the jury and not by the mine examiner.

4. MINES AND MINERS—*nature of employment.* Whether a company man, employed in a coal mine, is employed in making a dangerous place safe, or merely directed to clean up a cross-cut, are questions of fact for the jury.

5. MINES AND MINERS—*marking places of danger.* An instruction, the effect of which is to ignore the duty of the operator of a coal mine to mark a working place in the mine known to be dangerous, is erroneous.

6. MINES AND MINERS—*instructions.* An instruction that even though the jury should find that a coal mine had not been properly examined, yet if they should find that an examination would have disclosed the fact that a rock in the roof of a cross-cut was not loose, and further that plaintiff made it loose by prying it, and was injured by its falling upon him, the owner of the mine would not be liable, may properly be given.

Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913. Rehearing denied May 29, 1913.

WISE, KEEFE & WHEELER and R. B. HENDRICKS, for appellant; MASTIN & SHERLOCK, of counsel.

D. H. MUDGE, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee, while in the employ of appellant in a coal mine in Madison county, Illinois, as a "company man," was injured by the fall of a clod from the roof of a cross-cut and brought this suit for the injuries so received.

The declaration averred that appellant permitted a dangerous condition to exist in a certain cross-cut in its mine, caused by loose, insecure and dangerous rock or clod attached to the roof at appellee's working place; that it wilfully failed to cause said working place to be marked by its mine examiner with the month and day of his visit on the 16th day of July, 1910; that through its mine examiner, it wilfully failed to fix a conspicuous mark at appellee's working place as notice to the appellee to keep out; and, that it allowed appellee to enter said working place, not under the direction of the mine manager, before said dangerous condition existing therein had been made safe. A verdict in favor of appellee for $1,500 was followed by a judgment for a like amount.

The proof showed appellee to be a man of 50 years of age and that he had been engaged in coal mines in different capacities for some 28 years. For about a year and a half he had been employed in appellant's mine and for some two months just prior to his injury he had been doing company work, which required him to do whatever the mine manager directed him. He was earning from $2.50 to $3.00 a day. At said date coal was not being mined and hoisted from appellant's mine at this shaft, neither had the mine been so worked for several months prior thereto. There had been a fall from the roof of a cross-cut between the third and fourth entry on the east side of the mine prior to this, so that it could not be used. Men, among whom was appellee, were employed in the mine, cleaning up this cross-cut and other places, so that the mine could be again put in operation for producing coal. These men

were working under the direction of the mine manager and were divided into a night shift and a day shift, appellee belonging to the former. About ten days before the injury occurred, the mine manager, at the bottom of the shaft, about 2,000 feet from the cross-cut, directed appellee and his "buddy" John Tweedy, to go to work in the cross-cut, which they proceeded at once to do and were so employed until appellee was hurt.

Upon the trial there was a conflict in the evidence of the parties as to whether appellee and his companion were employed simply to clean out the fall and restore the cross-cut to its former condition, so that it could be used as a passageway between the two entries, or whether they were employed and instructed to make the place safe. The testimony on behalf of appellee tended to show they were instructed by the manager to "clean up" the cross-cut. The manager, however, testified that he gave them no directions but that they were in charge of the night boss who gave directions as to the duties of the men, and the night boss swore that he told appellee and Tweedy to "clean up, take down and make safe the cross-cut. To take down anything and make safe." When the men went to work that night they had reached a place where a clod hung from the roof of the cross-cut some 8 or 10 feet above the floor. It was three or four feet long, two or three feet wide and eight to twelve inches thick and unsupported by timbering or other artificial means. It however adhered to the rock above it and one end next to the "gob" was supported by the coal. Their work had progressed past the clod and the mine examiner had seen it a few days before. Appellee and Tweedy, in the progress of their work, would load dirt, rock and other material, obstructing the cross-cut into the miner's car and when it was full, a driver would come and take it to the bottom of the shaft. After loading the box that night they attempted to get the clod down. They had already taken some dirt from around it the

night before and on this occasion, appellee got on the dirt box, dug a hole in behind the clod and attempted to pry it out with a pick. The attempt to take it down was finally abandoned. The loaded car was hauled out and the two men went to work under the clod, loading another box, when suddenly the clod fell striking appellee inflicting the injuries complained of. Both bones of one of his legs were broken between the ankle and the knee, one of which protruded through the wound in the leg. He was in the hospital for eleven weeks and on crutches for about six months. His surgeon's charges were $100, and hospital charges $8 a week, in addition to an extra charge of $5 for the use of a dressing room.

Appellant's mine examiner stated that on the night in question and a few hours before appellee was hurt, he, in the performance of his duties, got on the box and examined around the clod with his light and sounded with his rod; that he found it solid and did not mark it as dangerous. In fact the proofs sustain the allegation of appellee's declaration, that there were no marks to show that the examiner had visited the place or to serve as danger signals and that appellee was not warned of any danger there might be from the hanging clod. If the place where appellee was at work was dangerous and appellant owed appellee the duty prescribed by law, for the protection of mine workers and the wilful failure of appellant to comply with the statute was the proximate cause of the injury, then appellee was entitled to recover. Whether the place was dangerous and whether appellant wilfully failed to comply with the statute, were questions of fact for the jury. Smith v. Illinois Collieries Co., 155 Ill. App. 148; Aetitus v. Spring Valley Coal Co., 246 Ill. 32.

In the last mentioned cause, which in some respects is similar to the one before us, as the appellee there appears to have been a workman who was injured by a fall of rock while he and his companion were en-

gaged in preparing a place where the coal company desired to build a stable and where the workmen had tested the roof above them with their picks and pulled down some loose rocks, but the place had not been marked as dangerous by the mine examiner, it was said: "It has been repeatedly held by this court that it is the duty of the owner or operator of a mine to have his mine examined and if it is in a dangerous condition to have the dangerous places designated by the statutory marks, and if he fails in either particular, with knowledge of its dangerous condition or with knowledge of facts, from which he ought to know of its dangerous condition, he is liable to a person in the mine under his employ who is injured as a result of his wilful failure to obey the mandates of the statute. If the mine is in a dangerous condition, and the owner or operator has failed, with knowledge of its condition to comply with the statute, he is liable, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous. * * * The question of the condition of the entry at the point where the accident occurred was one of fact to be determined by the jury, and not by the mine examiner."

Appellant contends however, that appellee was engaged in making a dangerous place safe and therefore appellant owed him no duty under the statute, to cause the place of danger to be marked. Whether or not appellee was engaged in the work of making a dangerous place safe or was only employed and directed to clean up the cross-cut, were questions of fact for the jury. Upon all these questions of fact there was evidence to support a finding in favor of appellee and no reason appears to us from the proofs, why their verdict should be disturbed.

It is further contended by appellant however, that the court erred in refusing two of the instructions offered by it. The first of these instructions told the

jury that even though they should find that the mine examiner was not in the cross-cut and made no examination of the same, yet if they found an examination would have disclosed the fact that the clod was not loose, and if they should further find that appellee made it loose by striking and pulling it with his pick and that he pulled it with his pick after the usual time for the mine examiner's examination, and the clod thereafter fell and injured him, that appellant would not be liable. It is said by appellee that this instruction presents the question of contributory negligence on his part, which is not a defense in suits of this character. We are inclined to the opinion that while the instruction might properly have been more carefully guarded along the line upon which the criticism is made, yet the court might well have given it. The principle enunciated in it however, was fully covered by other instructions given on behalf of appellant and therefore the court did not err in refusing this one. The other instruction, the refusal of which is complained of by appellant, did not state the law correctly as the effect of it was to ignore the duty of appellant to mark a working place in the mine known to be dangerous.

Counsel for appellant also complain that objections were sustained by the court to several questions asked by them of appellee, on cross-examination. We are inclined to the belief that the questions referred to were improper as asked, but at any rate the substance of them was covered by other questions asked of appellee on cross-examination and answered by him.

The judgment of the court below will be affirmed.

*Affirmed.*