## American Bridge Works v. Peter B. Pereira, Adm'r.

1. JURORS—*Examination of.*—A party to a civil action is not limited in the examination of the jurors to questions for the purpose of ascertaining whether the person interrogated possesses the necessary qualifications to act as a juror. Each party is entitled to three peremptory challenges and is, therefore, entitled to question each juror, within reasonable limits, for the purpose of determining whether or not he will peremptorily challenge him.

2. SAME—*What the Law Permits in Examination.*—The law permits an examination to ascertain whether or not the jurors are impartial, as between the litigants. If certain facts are ascertained by such examination they may constitute a cause of challenge.

3. SAME—*The Field of Inquiry Not Limited.*—The field of inquiry is not limited, however, to the ascertainment of whether jurors are impar-

American Bridge Works v. Pereira.

tial. Beyond that field the range of inquiry is largely within the discretion of the examining counsel, supervised by the court.

4. SAME—*Right of Challenge.*—A party is free to challenge, within the number limited by law, without giving any reason therefor. Within the general limits of propriety and pertinence he may search for facts that will reasonably justify a peremptory challenge.

5. SAME—*Peremptory Challenge.*—Peremptory challenges of jurors are allowed by law to be made or omitted, according to the judgment, will or caprice of the party entitled thereto, and no reason can be required for the manner in which the right is exercised.

6. SAME—*Examination by the Court Does Not Exclude the Right of a Party to Examination.*—While the court may examine jurors for the purpose of determining whether they possess the statutory qualifications, such examination can not operate to exclude the right of a party to examine the jurors individually.

7. BILL OF EXCEPTIONS—*Can Not Be Modified by the Certificate— Office of the Seal and Signature.*—The office of the judge's signature and seal is to attest or verify the correctness of the bill of exceptions. If incorrect he should refuse to sign it till corrected, but the court is inclined to the opinion that he can not add to, subtract from, or in any way modify a bill of exceptions presented for his signature by a mere certificate.

**Trespass on the Case.**—Death from negligent act. Trial in the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed November 16, 1898.

JOHN A. POST and LEE & HAY, attorneys for appellant.

There is no process in connection with the jury demanding so much scrutiny and circumspection as the impaneling of a jury—the obtaining twelve duly competent, impartial men to try the issue; and just at this point the greatest efforts are made by the parties to detect any who are likely to be unfair, or biased, or inimical to either side, and to secure such as may be relied on to give an unprejudiced examination to the facts involved in the issue. And the law for this purpose affords every facility and safeguard; tolerates the most searching inquiry at the expense of much delay and inconvenience, and assists with its authority to elicit the facts, and the disposition of mind of those proposed as jurors, so that a judgment can be formed as to their fitness for the responsible duty required of them. Proffatt, in his

work on Juries, page 197, Section 145; also Winnesheik Ins. Co. v. Schueller, 60 Ill. 472, and the noble quotation from Justice Marshall, set forth in the opinion in that case.

WARVELLE & CLITHERO and MUNSON T. CASE, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment rendered in an action by appellee against appellant for negligence by reason of which appellee's intestate, a boy about fifteen years of age, was killed. The following is an extract from the bill of exceptions:

"And thereupon twelve jurymen were called for examination and the following proceedings took place in such examination, and in the examination of other jurymen called in the place of those excused, such proceedings and examinations being as follows:

"The Court: Gentlemen of the jury, this is a suit brought by Peter B. Pereira, on behalf of Louis Pereira, deceased, against the American Bridge Works, a corporation, to recover damages on account of the death of Louis B. Pereira. The plaintiff charges that this accident took place on the 31st day of July, 1896, or about that time, from the alleged negligence of the Bridge Works and its employes. It is further claimed that this deceased, Louis B. Pereira, was at that time in the employ of the Bridge Works, and was carrying out the orders given to him. The defendants were engaged in the manufacture of bridges, and had a plant or factory for that purpose. It is alleged that one of the girders fell upon him and caused his death, and it is further claimed that this girder fell upon him by reason of the alleged negligence of the company.

"Has any one of you ever heard of this case before? (No response.)

"Q. Is any one of you acquainted with the parties to the case? (No reply.)

"Q. Is this gentleman, the plaintiff, in court?

"Mr. Hay: This is the father (indicating).

"Mr. Case: This is Mr. Pereira, Peter B. Pereira.

The Court: "What relationship is there between the plaintiff and the deceased?

"Mr. Case: Father and son.

"The Court : Very well. This gentleman is the father of the deceased. The deceased was about fifteen years old at the time he got killed. Now, is any one of you acquainted with the father there or with his family? (No response.)

"Q. Has any one of you ever had any dealings with the American Bridge Works? (No response.)

"Q. Did any one of you know any of its officers, agents or employes? (No response.)

"Q. Did any one of you know this Louis Pereira in his lifetime? (No response.)

"Q. The attorneys in this case sit in front of you at the table there. Do you know either of them? (No response.)

"Q. Has any one of you ever been involved, or in any way interested in the same kind of an accident as this one? (No response.)

"Q. Either in your own behalf, in behalf of yourself, or for others? If so, mention it. (No response.)

"Q. Has any one of you a suit like this or of a similar kind pending in court? (No response.)

"Q. Either on your own behalf, or is there such a suit in which you are in any way interested? (No response.)

"Q. Have you, any of you, any feeling of prejudice, bias or sympathy, either for or against a suit or claim of this kind or character? (No response.)

"Q. Or against any person bringing such a suit, or prosecuting such a claim? (No response.)

"Q. Has any of you ever been in the employ of the American Bridge Works? (No response.)

"Q. As I said before, this defendant is a corporation. Has any one of you any feeling of prejudice or bias for or against a corporation, or against this corporation in particular? (No response.)

"Q. I take it, gentlemen, from your remaining silent, that you mean to say you have not. (No response.)

"Q. Now, can every one of you, each one of you, try this case, so far as the Bridge Works are concerned, just the same as if the defendant, instead of being a corporation, were a natural, living person, both upon the question of liability, and, if you should get that far, upon the question of damages? (No response.)

"Q. It will be your duty to try this case upon the evidence and instructions of the court. Will you do so? (No response.)

"Q. In other words will you treat this corporation just the same as you would a living person? (No response.)

" Q. You are to understand that you are not to find a verdict in favor of the plaintiff here without reference to the question of who is to blame for the accident. In this case and in this class of cases, it is always the main question who, if any one, is to blame for the accident.

" Q. Will you decide this case according to the evidence and the law, the evidence as given to you by the witnesses, and the law as given to you in the instructions of the court? (No response.)

" Q. I say again, gentlemen, from your remaining silent, I take it that you will. Is there any reason why any one of you can not give this case a fair and impartial trial? (No response.)"

This concluded the examination of jurors by the court, and thereupon, the attorney for appellee examined the jurors, peremptorily excused one of them, in whose place another juror was substituted, and appellee's counsel then accepted the twelve. Counsel for appellant proceeded to examine the jurors, when the following occurred:

" Mr. Hay: Mr. Tyler, are you acquainted with Mr. Case, or with his associates here? A. No, sir; I do not know any of the gentlemen.

" The Court: The court asked that question of all jurors, as counsel may remember.

" Mr. Hay: But there was no answer, you know.

" The Court: If they had known any of the gentlemen they would have said yes, I suppose.

" Mr. Hay: I believe, if the court pleases, that it is always preferable to ask the jurors these questions direct.

" The Court: I do not so look at it. The court asks these questions only in order to save time.

" Mr. Hay: Will the court allow me to go on with my examination on this line?

" The Court: Oh, no. If you wish to ask any questions of the jurors you may do so, but not along that line.

" (To which ruling of the court counsel for defendant then and there excepted.)

" Mr. Hay: Are any of you gentlemen acquainted with Mr. Pereira, the plaintiff in this case, who sits here back of his attorneys? A. I never saw him.

" Q. Mr. Tyler, have you any feeling of sympathy or prejudice in this case, or in any case where a plaintiff sues a manufacturing concern for personal injuries?

" The Court: That has all been gone over by the court.

" (To which ruling of the court in refusing to permit defendant's counsel to proceed with his examination as indicated in the above question, counsel for the defendant then and there excepted.)

" Mr. Hay : If the evidence in this case, Mr. Tyler, was evenly balanced, on the side of the plaintiff and defendant in this case, would you be inclined to find in favor of the plaintiff as against the defendant on account of its being a corporation ?

" Mr. Case : I object to that.

" The Court : Sustained.

" (To which ruling of the court counsel for defendant then and there excepted.)

" The Court : That matter will be, in all probability, regulated by instructions, if the counsel desire to submit instructions in that behalf.

" Mr. Hay : I desire to put these questions, if the court please, and of course I will submit to the ruling of the court in regard to them and take an exception. I desire to put those questions to each juror.

" The Court : Refused.

" (To the ruling of the court in refusing to permit said questions to be asked by counsel for defendant, the defendant, by its counsel, then and there duly excepted.)

" Mr. Hay : Will you, Mr. Tyler, in this case be governed by the instructions of the court as they are given and by the evidence as it comes from the mouths of the witnesses ?

" The Court : That question was asked by the court of all the jurors.

" Mr. Hay : If the court please, I did not hear.it, and I submit that I have the right to ask that question.

" The Court : I see no necessity for it where the court has already asked the question.

" (To which ruling of the court counsel for defendant then and there duly excepted.)

" Mr. Hay : Mr. Tyler, have you ever been, in a case of this kind, either interested in the plaintiff, or have any of your friends or any members of your family ever been interested in a case of this kind ?

" The Court : That question has been asked by the court, or substantially the same.

" (To which ruling of the court counsel for the defendant then and there duly excepted.) "

It will be observed that in respect to each of the foregoing questions asked by appellant's attorney, except one, the

court ruled against the question on the ground that it had been previously asked by the court, and not at all on the ground that the question was improper. Indeed, the fact that the court, in the examination of the jurors, asked a question, is evidence that in the opinion of the court, the question was proper. A party to a civil action is not limited in the examination of the jurors to questions for the purpose of ascertaining whether the person interrogated possesses the necessary qualifications to act as a juror. Each party is entitled to three peremptory challenges and is, therefore, entitled to question each juror, within reasonable limits, for the purpose of determining whether or not he will peremptorily challenge him.

In City of Vandalia v. Seibert, 47 Ill. App. 477, the judgment was reversed because the court refused to permit the defendant's attorney to ask each juror whether the plaintiff's attorneys were in his, the juror's, employ, as attorneys. The court says: "The right to a trial by an impartial jury is fundamental. The law permits an examination to ascertain whether or not the jurors are impartial, as between the litigants. If certain facts are ascertained by such examination, they constitute cause of challenge. The field of inquiry is not limited, however, to the ascertainment of these facts alone. Beyond that field the range of inquiry is largely within the discretion of the examining counsel, supervised by the court. He is free to challenge, within the number limited by the law, without giving any reason therefor. Therefore, within the general limits of propriety and pertinency, the examining counsel may search for facts that would reasonably justify a peremptory challenge."

In Donovan v. The People, 139 Ill. 412, the judge of the trial court "examined four of the jurors in respect to their statutory qualifications, and also as to whether they had heard or read the facts of the case, knew the defendant or her attorney, or had formed or expressed any opinion as to her guilt or innocence, or entertained any prejudice, or knew of any reason why they should not give the defendant a fair and impartial trial according to the law and the evi-

dence." After this examination by the court, the defendant's attorney claimed the right to examine the jurors for cause, and to put questions to them to determine whether he would interpose peremptory challenges, but the court denied the right, saying: "Except you examine the jurors for cause through the mouth of the court, you can not examine them at all." This was held reversible error, the court saying: "We are of opinion that the court erred in refusing the defendant's counsel permission to ask pertinent and proper questions of the persons called as jurors, testing their capacity and competency, and to advise him of the propriety of exercising the right of peremptory challenge. Upon the application of counsel for permission to examine the jurors called, the court announced as its ruling; 'except you examine the jurors for cause through the mouth of the court, you can not examine them at all,' thereby precluding, through the court or otherwise, any examination from which could be determined whether the right of peremptory challenge should be exercised. Peremptory challenges of jurors are allowed by law to be made or omitted, according to the judgment, will or caprice of the party entitled thereto, and no reason is ever given, or can be required, for the manner in which the right is exercised. 4 Blackstone's Com., 353; 1 Ch. Cr. Law, 534."

The fact that some of the same or substantially similar questions may have been previously put by the court does not justify the ruling, for two reasons: First, the record shows that none of the questions were answered · by the jurors. The words "no response" necessarily mean no answer by word or sign. Second, while the court may examine jurors for the purpose of determining whether they possess the statutory qualifications, such examination can not operate to exclude the right of a party to examine the jurors individually. This is a valuable and substantial right. Proffatt on Jury Trial, Sec. 145. It has been the uniform practice in this State since its organization to permit such examination, and is recognized by section 21 of the statute in regard to jurors. Donovan v. The People, *supra*.

Counsel for appellee refer to the judge's certificate to the bill of exceptions, and apparently rely on it as curative of errors which may have occurred in the impaneling of the jury. The judge certifies that "After the court had completed questioning the jury, he was satisfied that the members of the jury would try the said cause fairly and impartially, according to the evidence, and would observe and follow the instructions of the court, and that none of the jury was acquainted with either of the parties, and that none of the jury was ever involved in the same kind of an accident as is in question in this cause, either in his own behalf or for others, and that none of them had a suit like this pending in court, or was in any way interested in such suit, and that none of them had any feeling of prejudice, bias or sympathy either for or against such a suit or claim as this, or against any person bringing such a suit, and that none of them had any feeling of prejudice or bias for or against a corporation, and that every one of them could try the cause, as far as the defendant was concerned, just the same as if the defendant, instead of being a corporation, were a natural living person."

Now, in respect to the error assigned, viz., depriving appellant of the right to examine the jurors, it is obvious that the fact that the court "was satisfied," as stated in the certificate, is wholly immaterial. Such certificates as the foregoing are certainly not authorized by the statute, which merely provides: "If, during the progress of any trial in any civil cause, either party shall allege an exception to the opinion of the court, and reduce the same to writing, it shall be the duty of the judge to allow said exception and sign and seal the same, and the said exception shall thereupon become a part of the record of said cause." The office of the judge's signature and seal is to attest and verify the correctness of the bill of exceptions. If incorrect, he should refuse to sign it till corrected, but we are inclined to the opinion that he can not add to, abstract from, or in any way modify a bill of exceptions presented for his signature by a mere certificate.

Having carefully read and considered the evidence, our conclusion is that, to say the least, it is a very doubtful question whether the verdict is sustained by the greater weight of the evidence—so doubtful that, had the verdict been for the defendant, we would not feel justified in disturbing it as being contrary to the weight of the evidence. Such being the case, appellant was especially entitled to a fair and impartial trial and to all its rights in the premises.

We find no substantial error in the giving or refusal of any instruction or in the admission or rejection of evidence.

The judgment will be reversed and the cause remanded.