Mable Bellchambers, Appellee, v. Robert Ebeling and
Victor Ebeling, Appellants.

Gen. No. 39,639.

Opinion filed March 16, 1938. Rehearing denied
April 1, 1938.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellants; BURT A. CROWE, of counsel.

FINN & MILLER, of Chicago, for appellee; ROBERT S. COOK, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This cause is in this court upon an appeal by the defendants from a judgment for $7,500 entered by the court upon a verdict of a jury after a remittitur was entered by the plaintiff of $2,500. The action was to recover damages for personal injuries alleged to have been sustained by the plaintiff on October 24, 1934, in an automobile accident which occurred on Keene avenue south of 145th street, southwest of Chicago, Illinois.

The defendants, Robert Ebeling, aged 26 years, and his brother Victor Ebeling, aged 18, both lived with their mother and worked on her farm near Orland Park, southwest of Chicago, Illinois. Robert Ebeling received wages from and was supported by his mother, whereas Victor Ebeling was supported by his mother out of the proceeds of the sale of farm products.

On the night of October 24, 1934, a Mr. Buck came to the Ebeling home to buy eggs. Mrs. Ebeling, the mother of these two defendants, did not have a sufficient quantity of eggs and asked Victor to go to his grandfather's home, a distance of two or three miles, to get the additional number of eggs needed. Robert Ebeling, the brother, and one of the defendants, was the owner of a Chevrolet car, and was not at home at the time of the occurrence, but had previously given a general consent to Victor Ebeling his brother and codefendant to drive the car when he wanted to. On the occasion in question the defendant Victor Ebeling took the Chevrolet car, drove to his grandfather's, secured

the eggs needed, and on his return was involved in the accident out of which this lawsuit arose.

The plaintiff Mable Bellchambers, with her husband and two children, was riding in a Whippet coach automobile from Fort William, Ontario to Nova Scotia. The accident happened about 7:00 o'clock at night. At that time it was raining and very dark, and the weather was stormy. On Keene avenue, about a mile south of 145th street, Mr. Bellchambers, plaintiff's husband, discovered that one of the tires of his automobile was getting soft. They were driving south on a two-lane concrete road. Mr. Bellchambers pulled to the right side of the pavement by driving the Whippet car off the pavement onto the dirt shoulder, the two left wheels, front and rear remaining on the concrete pavement so that the car was half on and half off the pavement. The shoulder was 11 or 12 feet wide.

The evidence as to whether or not the taillight on the Whippet coach was lighted at that time is conflicting. The defendant Victor Ebeling was driving south on the concrete pavement, when he arrived at the crest of one of three hills located on Keene avenue and came upon the Bellchambers' car parked on the pavement, as we have indicated. There is evidence that Victor Ebeling was unable to turn to the left of the Bellchambers' car because a northbound automobile was proceeding on Keene avenue, and turning to the left would have resulted in a head-on collision. The defendant Victor Ebeling turned to the right onto the shoulder to go around the parked car. At this time Mr. and Mrs. Bellchambers had stepped out of their car. Mr. Bellchambers had got back into the front seat of the automobile, the front door of the coach was open, Mrs. Bellchambers standing near it. Ebeling's car struck Mrs. Bellchambers, knocking her down and causing some damage to the door of the Whippet coach, and as a result

of the accident Mrs. Bellchambers received the injuries complained of.

Both the plaintiff and her husband testified that as they walked to the back of the car to examine the tire they faced north and that they saw no car or traffic coming from north to south on the road and that they could see in that direction to 143rd street or beyond at least half a mile to a mile. They further testified they walked back to the door to get into the car, that they then faced south and could see in that direction for half a mile to a mile, and that neither saw any vehicle coming from that direction, and stated that no vehicle passed from the south to the north on the shoulder of the road as we have indicated.

The defendant, Victor Ebeling, testified that he was driving south behind the standing Whippet automobile; that he turned to the right onto the shoulder of the road and struck the plaintiff as she was getting into her car from the road shoulder and threw her against the right door which was open, and that the car operated by him ran past the Whippet coach and stopped when his front wheel went into the ditch.

The facts as shown by the testimony are in controversy, and the question as to the operation of the Ebeling car and the effort to pass the automobile parked half on and half off the pavement, was one for the jury to determine.

The first point called to our attention is that the trial court erred in permitting plaintiff's counsel to interrogate the jurors on their *voir dire* examination.

The questions asked were as follows:

"Is anyone of you interested as a policyholder or otherwise in the Illinois Agricultural Mutual Insurance Company of Illinois?"

"Are any of your intimate friends or relatives either policyholders or connected with the Illinois Agricultural Mutual Insurance Company?"

When this case was called for trial, counsel for the plaintiff presented an affidavit to the court and to defendants' counsel, verified by Robert S. Cook, one of the attorneys for the plaintiff, in which it was alleged that the plaintiff was injured on October 24, 1934, by reason of being struck by an automobile in possession and control of the defendants. Affiant further stated that he was informed and believed that the Illinois Agricultural Mutual Insurance Company of Illinois was interested in the result of the suit, that that company, prior to the time of the injury, had issued an insurance policy to Robert Ebeling covering the automobile in question and insured said Robert Ebeling and any person operating said automobile by and with his consent against damages for injuries occasioned thereby; that the attorneys of record, Jenkins & Kirkpatrick represent the Illinois Agricultural Mutual Insurance Company and that Burt A. Crowe, who appears in court representing the defendants, is also representing said Illinois Agricultural Mutual Insurance Company and that the said Illinois Agricultural Mutual Insurance Company will be liable to pay the judgment if any is rendered in the above entitled cause. The two questions above quoted were asked of the jurors collectively.

During the selecting of the jury some jurors were excused upon examination and others took their places, and in each instance, of which there were several, plaintiff's attorney inquired of the new jurors coming into the jury box as to the insurance feature above mentioned.

The defendants contend the court erred in permitting plaintiff's counsel to interrogate the jurors on questions which were undoubtedly designed to and probably did inform the jury of the fact that the defendants were insured against damages by the Illinois Agricultural Mutual Insurance Company; that the

questions were erroneous and call for a reversal of the judgment entered against both defendants in this case.

In *Smithers v. Henriquez*, 287 Ill. App. 95, this court held that judgment in an action for personal injuries arising out of an automobile collision will not be set aside because plaintiff's counsel questioned jurors on the *voir dire* as to their interest in a named insurance company, unless it appears from the entire record that a fair trial has not been had or that justice has not been done, since much of the examination of jurors must be left to the discretion of the trial judge.

While the defendants have questioned the correctness of this ruling and have cited a number of authorities of courts of appeal that may seem to be in conflict with the ruling of this court, yet it does not appear from anything called to our attention that the right of the defendants to a fair trial was prejudiced by the asking of the questions indicated as being put to the jurors in examining them as to their qualification to act in this particular litigation.

An error which the defendants contend is a reversible one is that the court failed to appoint a guardian *ad litem* for the minor defendant, Victor Ebeling, and allowed the case to go to a verdict and judgment without the appointment of such guardian *ad litem*, it appearing from the evidence that the defendant, Victor Ebeling, was 18 years of age at the time of the trial, and therefore by such failure the court was without jurisdiction to enter the judgment here on appeal.

However, it does appear from the record that a guardian *ad litem* was appointed at the time the motion of the defendant for a new trial was being heard by the court. This was one of the errors called to the attention of the trial court by the defendants in their motion for a new trial. During the hearing upon this motion the attorney for the plaintiff is quoted as follows:

"Mr. Finn: We could not consent to the entry of a judgment against both the minor and his brother unless a guardian *ad litem* is appointed for the minor, *nunc pro tunc.*"

It appears from a further quotation that the attorney for the plaintiff, Mr. Finn, stated:

"The court should at this time appoint a guardian *ad litem* before disposing of the motion because it has been brought to the court's attention. I don't think it is material whether it appears *nunc pro tunc* or appears now, but the court now has knowledge of the fact that the boy is a minor, and he ought to appoint a guardian *ad litem* now." After which, at the request of plaintiff's counsel, the court signed a certificate, which was prepared by plaintiff's counsel, as follows:

"The court further certifies that nothing has been brought to the knowledge of the court which would tend to indicate that the defendant, Victor Ebeling, has been deprived of any defense or any rights or privileges as a minor of which he could have taken advantage had a guardian *ad litem* been appointed at the time of the starting of the suit or any time thereafter, and no showing has been made at any time by said defendants or their attorney, on behalf of said minor, Victor Ebeling, that he suffered the loss of or has been deprived of any such rights or privileges."

In support of defendants' contention that it was necessary that a guardian *ad litem* be appointed for the minor they have cited a number of cases in which the question of the appointment has been discussed, among which are the following: *Peak v. Shasted,* 21 Ill. 137; *Kesler v. Penninger,* 59 Ill. 134; *Millard v. Marmon,* 116 Ill. 649; *White v. Kilmartin,* 205 Ill. 525; *Wettrick v. Martin,* 181 Ill. App. 94; *Thurston v. Tubbs,* 250 Ill. 540; *Paskewie v. East St. L. & S. Ry. Co.,* 281 Ill. 385; *McCarthy v. Cain,* 301 Ill. 534; *Martin v.*

*Starr,* 255 Ill. App. 189, and *Collins v. Hastings,* 283 Ill. App. 304.

The general rule, which seems to be supported by these authorities, is that a judgment entered against a minor without the appointment of a guardian to defend the action is not void but voidable. In the case before us the boy at the time of the accident was 18 years of age, and counsel for the plaintiff has answered by citing authorities from which it appears that where the minor suffered no hardship or loss of substantial rights, the failure to appoint a guardian *ad litem* would not justify the setting aside of the judgment entered, and that in order to justify a reversal it must appear that substantial rights of the infant were affected by the failure to appoint a guardian *ad litem.*

Counsel for the plaintiff at the time defendants' motion for a new trial was heard seemed to be of the opinion that the appointment of a guardian *ad litem* was necessary, and the guardian was appointed, but it does not appear that he participated in the trial, nor that he advised the court of the interests of the infant and his rights therein.

From the authorities cited, the rule in this State is that the appointment of a guardian *ad litem* is necessary, in order to protect the interests of a minor in the trial of a cause. To say that the substantial rights of the infant were protected would require the court to consider the case from the standpoint of the infant and determine whether by the failure of the appointment the court should reverse the judgment. It is the duty of the court to care for the interests of the defendant here, and apply the rule above stated, which is applicable equally well to all minors.

In the case of *Collins v. Hastings,* 283 Ill. App. 304, cited in the above list of cases, Ruby Collins, administratrix, recovered a judgment against John Hastings, Sr., and Donald Hastings. From the evidence it ap-

pears that Donald Hastings was 16 years of age. The court said:

"The record further discloses that no guardian *ad litem* was ever appointed by the trial court for the minor defendant Donald Hastings, and it is insisted by appellants in this court that it was error for the trial court to proceed with the trial of this cause without first appointing a guardian *ad litem* for this minor defendant. Counsel for appellee insist that inasmuch as this omission was not called to the attention of the trial court and was not raised in appellants' motion for a new trial, it has not been properly preserved by appellants, but has been waived and cannot be raised for the first time in this court. . . .

"In 31 C. J. 1121, it is said that while in some jurisdictions it has been held that a judgment against a minor not represented by a guardian *ad litem* is void and subject to collateral attack, without resort to an appeal, still the weight of authority is to the effect that where the court has otherwise jurisdiction, a judgment or decree rendered against an infant without the appointment of a guardian *ad litem,* while it may be erroneous and subject to be reversed, is at most only voidable and remains in full force and effect until reversed on appeal or error or set aside by direct proceedings and is not subject to collateral attack and that this rule applies to decrees in equity as well as judgments at law. 22 Cyc. 641 is to the same effect and in 22 Cyc. 636, it is said: 'The record should affirmatively show that a guardian *ad litem* was appointed to appear and answer for infant parties, otherwise the judgment or decree will be reversed on error or appeal.' "

In discussing the case, which was an action to recover for the wrongful death of the plaintiff's son, aged 18, who was killed when riding in the defendant's car driven by his 16-year-old son, also a defendant, when it collided with a truck coming from the opposite

direction while passing another car on a hill on a rainy day, the court held that a verdict for the plaintiff must be reversed where it appeared on appeal that a guardian *ad litem* had not been appointed to protect the interests of the infant. In support of the theory of this court several of the cases that have been called to our attention by the defendants in this action are cited with approval by the Appellate Court, and in this case the court further said:

"From these authorities and many others, it is apparent that the failure to appoint a guardian *ad litem* is an error which the minor could not waive in the trial court. It is therefore difficult to understand why he could be deemed to have waived it by failing to specify it as a ground in his motion for a new trial. Judgment against a defendant is not rendered by the court until after a ruling has been made on a motion for a new trial. To say that the judgment, which is rendered after the motion for a new trial is denied, is voidable in the trial court because a guardian *ad litem* was not appointed for a minor defendant, still is valid in an appellate court when the record of the trial court is being reviewed upon a direct appeal would create an anomaly in the law, if in such appellate court, upon a direct appeal, the objection to the judgment could not be raised and the avoidable judgment avoided."

So, when we come to consider the application of the reasoning of the Appellate Court to this case it would be erroneous to affirm the judgment. The error may be taken advantage of for the first time upon appeal to this court, and if it could be raised and was of such a serious nature as to justify a reversal, there certainly could be no complaint in this case for the reason that objection was made and included as one of the errors in the defendants' motion for a new trial and should have been considered by the court in passing upon this motion.

It is next to be considered whether the guardian *ad litem* was appointed in apt time. We have stated before in this opinion that the guardian *ad litem* was appointed by the court upon the insistence of plaintiff's counsel, but the appointment and the certificate of the court incorporated in this opinion were made just before the court overruled the defendants' motion for a new trial. We are of the opinion that the appointment as made does not comply with the reasoning of the courts that an appointment should be made for the purpose of protecting the interests of the minor, and to say that this appointment meets the requirements is not justified by any rule or reasoning. The purpose of such an appointment, as we have stated before, is to protect the interests of the minor. From what we have said on this question, we believe the court erred in not granting a new trial on the ground urged by the defendants.

The question of an excessive verdict has been called to our attention, but in view of our conclusions it will not be necessary to consider it, for the reason that the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Denis E. Sullivan and Hall, JJ., concur.